## BROWN v. McCALL.

1. TRUSTEE—REMAINDERS—ESTATES IN FEE.—Where the Court of Equity settles upon the widow (who has remarried) all of her share in the estate of her first husband, and directs the master of the court to execute a conveyance of it to A in trust for herself and her present husband for life, and then to the use of her children, and the master sells and conveys all of the personal property allotted to her in partition, and "all other interest which she may have in the estate of her intestate," to A, "his executors, administrators, and assigns," upon the trusts prescribed by the court, and afterwards the master conveys a tract of land, part of the same estate, to A, "his heirs and assigns, forever," to be held upon the same "uses, trusts, and limitations as are mentioned" in the former deed, the estate of the remaindermen in this land, after the termination of the life estates, were estates in fee simple.

2. DEEDS—INTENTION.—The intention of deeds, as disclosed by their language, in the light of the surrounding circumstances, is entitled to great weight in determining their construction.

3. REMAINDERS—CLASS—TRANSMISSION.—A tract of land was settled by the Court of Equity upon a married woman, by directing conveyance of this

land to a trustee, to hold in trust for her for life, and then for her present husband for life, "and after the death of the survivor, one-half to the use of her children by her first husband, the issue of a deceased child taking by representation the parent's share, and the other half to her issue by her present [second] husband, the issue of a deceased child taking by representation the parent's share"—and such deed was accordingly executed and delivered. *Held*, that the half given in remainder to the children by the first husband, vested in them at the date of the execution of the deed, and were transmissible, for the reason that, their father being dead, they were an ascertained class (as much so as if mentioned by names), and the shares of such of them as died before the surviving life tenant, passed to their vendees or heirs at law, provided they left no issue; but if they left issue who survived the life tenants, then their shares could not be claimed by their vendees or heirs at law, but were diverted by the express terms of the deed, and vested in such their issue.

4. REMAINDERS—ISSUE—CHILDREN.—Where a remainder is given to the children of the life tenant, "the issue of a deceased child taking by representation the parent's share," the word "issue" means children of the deceased child.

5. EXCEPTIONS—PARTIES AFFECTED—FACTS.—The question of rents and profits not considered, because clearly raised by the exceptions of only those parties who are adjudged to have no interest in the land, and where excepted to by another as a matter of fact, with testimony not sufficient to show error in the findings of the Circuit Court.

Before TOWNSEND, J., Sumter, October, 1894.

Action by G. W. Brown, B. F. Brown, and Julia A. Bracy, against Emily S. McCall and others. The circuit decree, omitting the statement of facts repeated in the opinion, was as follows:

There is no contention about the interest that the Brown children took. There is no doubt that they took contingent interests, and the life tenants having died, G. W. Brown, B. F. Brown, and the children of Jesse Brown, took among them under the deed, one-half of the trust interest. The only question of importance is, the character of the interests taken by the Berry children under said conveyance. It is contended on the one hand, that the said interests were contingent upon a survival of the life tenants, and that James D. Blanding, Octavia Moses, and John S. Richardson's devisees have now no interest in said land, because the parties from whom they pur-

chased, to wit: William M. Berry, James J. Berry, and Richard S. Berry, predeceased the life tenants, and, further, that as no words of inheritance were used in said deed, only a life estate was thereby conveyed to the Berry children, and that the grantees of such as are now dead have no interest in said land. On the other hand, it is contended that said interests were vested, and that said grantees have a fee simple title to the extent of their several purchases.

If the deeds made under order of the court conveyed only a life estate to Dorcas and Dr. Brown, and then a life estate merely to the children of Dorcas by both marriages, the solution of this whole question would be very much simplified. To determine this we must look at the order and not at the deeds. The order directed that all the interest of Dorcas in James R. Berry's estate be conveyed. What was that interest? Was it a dower interest, and, therefore, only for her life, or was it a fee simple interest? If it had been the former, the court would not have ordered a conveyance which carried it beyond the term of her natural life. The inference is, then, that it was a fee simple interest, and if this is correct, the order supplies all deficiencies in the deed. So much as to the quantity of interest conveyed by said deeds.

Now, as to the character of the interest taken by the Berry children. The character of the interest taken by the Berry children is a matter of some difficulty, but I am forced to the conclusion that they took a contingent interest, inasmuch as it was uncertain till the death of the life tenants, whether the Berry children or their issue would take. If this is correct, then the interest of two of them, to wit: Matilda and William M., both of whom predeceased the life tenants, and left no issue living at the death of the life tenants, reverted back to the estate of Dorcas Brown, and descended, under the statute of distributions, to the heirs at law of Dorcas Brown, and the children of James J. Berry and Richard S. Berry are now entitled, under the deed, to the shares of their parents instead of their grantees.

This disposes of the claims of James D. Blanding, Octavia Moses, the devisees of John S. Richardson, the elder, and James

E. Baumgartner, none of whom are entitled to anything. It remains only to determine what each of the other plaintiffs and defendants are entitled to. * * *

The additional grounds relied upon by plaintiffs were as follows: *First.* As to whether the estates in remainder were in fee simple, or for life merely, in the remaindermen. Though no words of inheritance were used, yet, as his honor states, it was clearly the intention to settle the whole estate of Mrs. Brown. A deed of settlement was executed by the commissioner to the trustee, declaring the trusts and limitations according to the directions of the court. The property settled was entirely personalty, and the limitations of the deed as to personalty were sufficient to pass the entire estate to the remaindermen without words of inheritance. Money funds of the trust estate were used by the trustee in purchasing the land which was conveyed to the trustee to be held on the trusts and limitations previously prescribed; which could not be done unless the remaindermen should be entitled to the same entire, absolute fee simple estate in the land which they were entitled to in the money which was changed into land. The mere change of money of the trust estate into land could not change the character or extent of the estates in remainder prescribed for the trust property while it was personalty. In the construction of those limitations the land continued to be the money which was used to purchase it. *Second.* As to who, on the death of the life tenants, were entitled as remaindermen: 1. In the construction especially of deeds of settlement the intention has weight. It would seem manifest that the intention was that the persons to be provided for were the children living at surviving life tenant's death and the issue of predeceased children. Who would be entitled would be unknown until that death, and the limitation was, therefore, a contingent one. 2. The remainder was limited to a class, "children," and only such persons as answered to that description at the death of surviving life tenants could take, the death of any of that class, before that event, leaving issue who should be then alive, being provided for by the substitution of such issue in place of and as representing the deceased child. 3. As to purchases at sheriff's sales of alleged shares of children who

predeceased surviving life tenant, leaving issue then alive, being
entitled instead of such issue, that construction would nullify
the terms and provisions of the deed. The rights of such issue
were as clearly declared as those of any "children" who should
survive life tenant. 4. Such issue was "substituted" for the
deceased child, and were *to take as a child.*

*Mr. J. D. Blanding,* for himself.

*Messrs. Lee & Moise,* for Richardson and Moses.

*Mr. T. B. Fraser, Jr.,* for Baumgartner and others.

*Messrs Haynsworth & Haynsworth,* for plaintiffs.

September 7, 1895. The opinion of the court was delivered by

MR. JUSTICE McIVER. James R. Berry died many years
since intestate, leaving an estate, both real and personal,
amongst which was the tract of land, containing 450 acres,
which is the subject matter of the present action. He left as
his heirs at law and distributees his widow, Dorcas, and eight
children, viz: Julia A., Emily S., William M., James J., Rich-
ard S., Theodore R., Matilda, and Vedora. Dorcas, the widow,
subsequently intermarried with one Washington H. Brown.
On the 29th of December, 1846, a bill was filed in the Court of
Equity by the said Washington H. Brown and wife, Dorcas,
against the children of the said James R. Berry, for a partition
and settlement of his estate. Under this proceeding, it appears
that a partition of the personal property was made, and the
tract of land above mentioned was ordered to be sold. It also
appears that the share of Dorcas Brown in the estate of her
first husband was settled upon her, and the commissioner in
equity was ordered to execute "a conveyance to William Lewis
of the property allotted to Mrs. Brown in the said partition,
and of all other interest she may have in the estate of her in-
testate (the said James R. Berry), in trust for the use of Mrs.
Brown during her natural life, and after her death to the use
of Dr. Brown (the said Washington H. Brown) for life, and
after the death of the survivor, one-half to the use of her

children by her late husband, James R. Berry, the issue of a
deceased child taking by representation the parent's share, and
the other half to her issue by her present husband, Dr. Brown,
the issue of a deceased child taking by representation the pa-
rent's share." In pursuance of this order, the commissioner
in equity, on the 14th day of August, 1849, executed a deed to
the said William Lewis, "his executors, administrators, and
assigns," for all the property "allotted to Mrs. Brown on the
said partition," which we understand to have been personal
property only, "and of all other interests which she may have
in the estate of her intestate (James R. Berry, deceased,)" upon
the trusts prescribed in said order. The land which was or-
dered to be sold, to wit: the 450 acres, was purchased by the
trustee, William Lewis, with the funds of the trust estate in
his hands, by the permission of the court, and on the 28th day
of August, 1849, was conveyed by the commissioner in equity
to the said William Lewis, "his heirs and assigns, forever," to
be held by him upon the same "uses, trusts, and limitations
as are mentioned" in the deed of settlement of the estate of the
said Dorcas Brown, executed on the 14th day of August, 1849,
as above mentioned.

At the time of the execution of these deeds of the 14th and
28th of August, 1849, respectively, all of the children of James
R. Berry above mentioned were alive, but at the time of the
death of the surviving life tenant, Dorcas Brown, who died on
the 9th day of November, 1890, only two of these children, to
wit: the plaintiff, Julia A. Bracy, and the defendant, Emily S.
McCall, survived. Of the other children, William H. Berry
predeceased the surviving life tenant, leaving no issue, though
it is stated in the circuit decree that he had a son, who like-
wise predeceased such life tenant. Four of these children,
viz: Theodore R. Berry, J. J. Berry, R. S. Berry, and Vedora
Harvin predeceased the surviving life tenant, but each of them
left children, who are now living, and are parties to this case.
Another of the children, Matilda Baumgartner, predeceased
the surviving life tenant, leaving her husband, J. E. Baum-
gartner, who is a party to this action, and one child, who like-
wise predeceased the surviving life tenant, and of whom the

said J. E. Baumgartner claims to be the sole heir. It also appears that the interest of W. M. Berry, R. S. Berry, and J. J. Berry, respectively, were sold in their lifetime by the sheriff under executions against them, and bought by J. D. Blanding, John S. Richardson, and Mrs. Octavia H. Moses, respectively, and that John S. Richardson having died since the commencement of this action, his devisees have been made parties to this case by an order of the court. It is also stated in the "Case" that none of the several parties, except John S. Richardson and Octavia H. Moses, demand an accounting from the plaintiff, Julia A. Bracy, for rents and profits—she, it appears, having been in possession of the land since the death of the surviving life tenant. It also appears that of the children of Dorcas Brown by her second marriage, only two survive, viz: George W. Brown and B. F. Brown, who are plaintiffs, the third child of that marriage having predeceased the surviving life tenant, but leaving children, who are parties to this case.

The Circuit Judge, by his decree, which should be incorporated in the report of this case, held that the remaindermen under these deeds took an estate in fee, and not for life merely, and that the interest of the children of James R. Berry, as well as the interests of the children of Washington H. Brown, were contingent upon their surviving the last surviving life tenant, and were not transmissible to their representatives. Hence, he held that only those of the children of both marriages, who survived the surviving life tenant, could take in remainder, while the issue of a deceased child, who survived the surviving life tenant, would take in remainder the share of their deceased parents; but that the shares of such of the children as predeceased the surviving life tenant, leaving no issue at the time of the death of the surviving life tenant, "reverted back to the estate of Dorcas Brown and descended, under the statute of distributions, to the heirs at law of Dorcas Brown." Accordingly, he rendered judgment that the land should be partitioned upon the principles above stated. He also adjudged that the evidence was not sufficient to show that Julia A. Bracy is liable to any of the parties in interest for rents, after paying taxes on the lands.

From this judgment several of the parties have appealed as follows: *J. D. Blanding,* upon the ground of error "in not holding that Wm. M. Berry took, under the deeds referred to in the complaint, a vested, transmissible interest in the land sought to be partitioned; and that this defendant was entitled to such interest under the deed of the sheriff to him." *The devisees of John S. Richardson* and *Mrs. Octavia H. Moses,* upon the grounds: 1st. That his honor erred in not holding "that vested estates passed under the deed to William Lewis, trustee, to the then living children of James R. Berry." 2d. Because of error in holding the evidence insufficient to show that Julia A. Bracy is liable for rents and profits. *Josephine Hodge* and others, children of Vedora Harvin, upon the ground of error in holding "that a fee was conveyed by the deed set out in the complaint." *J. E. Baumgartner,* upon the following grounds: 1st. Because of error in holding that a fee was conveyed by the deed set out in the complaint. 2d. Because of error in not holding that Matilda Baumgartner and Veronica Baumgartner took transmissible estates. 3d. Because of error in holding the evidence insufficient to show that Julia A. Bracy was liable for rents and profits. The plaintiffs also give notice that they would submit certain additional grounds, set forth in the record, which should be incorporated in the report of this case, for sustaining the circuit decree.

The first question, therefore, which is presented by these appeals is, whether the estates in remainder were in fee simple, or for life merely? We agree with the Circuit Judge that these estates were estates in fee simple, and not for life merely. The Court of Equity undertook to settle the interest of Dorcas Brown in the estate of her deceased husband, James R. Berry, which was, undoubtedly, an estate in fee, upon certain trusts and limitations, and we cannot doubt that the intention was to dispose of the entire estate, and not a part of it only, and it seems to us that such an intention was sufficiently expressed in the deed above referred to. The first deed covered personal property only, and the language used in that deed was certainly sufficient to vest in the grantees an absolute interest or estate, equivalent to a fee simple estate in realty.

Then when the second deed, which covered the land in ques-
tion, was made, the intention of the court, as manifested by
the recitals made in that deed, was declared to be to convey a
similar estate to the same persons as had been conveyed by the
previous deed, and the conveyance was, therefore, made to the
trustee, "his heirs and assigns, forever," which were certainly
apt and proper words to vest in the trustee an estate in fee
simple, in order to enable him to carry into effect the previously
declared intention to dispose of the entire and absolute estate.
It seems to us that this view is sustained by the cases of *Brat-
ton* v. *Massey*, 15 S. C., 277, and *Fuller* v. *Missroon*, 35 *Id.*, 314.

The next inquiry presents the more important and difficult
question as to who were entitled to take in remainder upon
the death of the surviving life tenant, and what was the
nature of such estates in remainder. Let us first exam-
ine the language used, which we are called upon to con-
strue in the light of the surrounding circumstances, in order
to ascertain, if possible, what was the real intention of the par-
ties, for there is no doubt that even in deeds, especially deeds of
settlement like this, intention is entitled to great weight. Here
was the Court of Equity, which, under the proceedings for par-
tition, had obtained control of the interest of a married
woman in the estate to be partitioned, and proposed to
make a suitable settlement of the same. Accordingly,
the proper officer of the court was directed to convey said pro-
perty to a trustee, to be held by him "in trust for the use of
Mrs. Brown during her natural life, and after her death, to the
use of Dr. Brown (her second husband), for life, and after the
death of the survivor, one-half to the use of her children by
her late husband, James R. Berry, the issue of a deceased
child taking by representation the parent's share, and the
other half to her issue by her present husband, Dr. Brown, the
issue of a deceased child taking by representation the parent's
share," and the property was so conveyed. Now, bearing in
mind the fact that, at the time these deeds were executed, all
of the Berry children were alive, would it not seem that if the
deed had stopped at the words, "for the use of her children by
her late husband, James R. Berry," that the intention was,

that such children should take a vested remainder, the enjoyment of which was postponed until the death of the surviving life tenant?

But as the deed did not stop at the words last quoted, it is necessary to inquire, what is the effect of the superadded words: "the issue of a deceased child taking by representation the parent's share?" While these additional words may have the effect of showing that the intention was, that if any child of James R. Berry should die before the surviving life tenant, *leaving issue*, such issue should take the share of such deceased child, and thereby defeat the remainder which would otherwise have been vested in such child, how could these additional words affect the case of a child dying *without issue* before the death of the surviving life tenant? It will be observed that the language is not "to the use of her children by her late husband (*living at the time of the death of the surviving life tenant*), the issue of a deceased child taking by representation the parent's share," but the language actually used omits the words which we have placed in parentheses and italicized, the very words which would appropriately express the intention (if it had been entertained) that the interest of any of the then living children of Berry was to be dependent upon the fact that such child should be living at the death of the surviving life tenant.

It is apparent, therefore, that if we look alone to the language of the deed, that the claims of the defendants, J. D. Blanding and J. E. Baumgartner, rest upon a different footing from those of the defendants, Octavia H. Moses and the devisees of John S. Richardson, for the former claim—the one as purchaser and the other as heir at law—the shares of children of J. R. Berry, who predeceased the surviving life tenant, *leaving no issue* living at the time of the death of such life tenant, while the latter claim as purchasers the shares of children who predeceased the surviving life tenant, *leaving issue* living at that time, and who are now parties to this case. But, before proceeding to consider or decide the relative merits of such claims, we propose to review the authorities which bear upon the general subject, though, as stated by one of the coun-

sel, there are but few cases that throw much light upon the particular points which are involved in the present case.

In *Cole* v. *Creyon,* 1 Hill Ch., 311, the testator devised and bequeathed his whole estate to his wife for life, and at her death "to be equally divided between Henry and Elizabeth Cole's children, and Alexander Creyon, viz: the offspring of said Elizabeth Cole's body, and no other—to be retained in the hands of my executors and executrix until the age of twenty-one years, or days of marriage, which shall first happen; then to be made over to them lawfully, each legatee receiving their just *quota* of the same, which I will and bequeath to them and their heirs forever." The only points decided in the case were: 1st, that the application for partition was premature, as the time for distribution fixed by the will had not arrived. 2d. That Alex. Creyon was entitled to one-half the estate, and the Cole children to the other half. Harper, J., in delivering the opinion of the court, does go on to express the opinion, with some hesitation, that when the time for distribution arrived, only those of the Cole children who were then alive would be entitled to participate in the distribution of their half, under the rule that where there is a bequest to children at the death of the tenant for life, that only those who then are *in esse* can take, as their interests do not vest until the time appointed for distribution. But, he adds: "There would be reason for making a different construction, and probably a different one ought to be made, when the child dying (before the time fixed for distribution), has left children; and this, also, to effectuate the intention, for it cannot be supposed that the testator intended the object of his bounty not to be capable of transmitting to his children so as to provide for them." It is somewhat difficult to understand how the question, whether the share of a child who was *in esse* at the time the will took effect (or if the question arose under a deed, as in the case under consideration, at the time of the execution of the deed,) vested, could be made to depend upon the happening of a subsequent event—the birth of issue which should survive the life tenant. If the share of the deceased child vested at all, it seems to us it must have been when the will took effect or when the deed was exe-

33—44

cuted; and if such share then vested, it would be transmissible, whether such child died in the lifetime of the life tenant, leaving issue or not. In other words, we do not see how the same words could be construed as creating a vested interest in a child who died having issue, and only a contingent interest in a child who died without issue, when there are no other words creating such a contingency.

In *Conner* v. *Johnson*, 2 Hill Ch., 41, the devise was to the widow for life, and "after the death of my wife" to be "equally divided between David Rees, and Daniel and Jacob Utesey, sons of Jacob Utesey, and David, and Isaac, and Anne Utesey, children of George Utesey, and Jacob Carn, and the children of Elizabeth Carn (afterwards Elizabeth Rhode, and now Elizabeth Conner), children and grand-children of Frederick Carn; and whereas, I have made four different parts of families my heirs, my will and desire is, that if any of them should die with (meaning without) issue, then, and in that case, his or her share shall be equally divided between my adopted heirs of the same family." Two of the persons named as remaindermen, viz: Daniel Utesey and Jacob Carn, died after the testator, and before the life tenant, leaving no issue, and one of the children of Elizabeth Carn, who was then married to Christian Rhode, died after the testator, and before the life tenant, leaving no issue. The first question was, whether the estate was to be divided amongst the remaindermen *per capita*, or whether each of the four families was to take amongst them one-fourth of the estate in remainder. The second question was as to the disposition of the shares of such of the remaindermen as died after the testator but before the life tenant, leaving no issue. Held, that at the testator's death the seven designated persons took seven-eighths of the estate as joint tenants, and the remaining eighth went to such of the children of Elizabeth Carn as were living at the death of the tenant for life; and that the shares of such of the designated persons as predeceased the life tenant, leaving no issue, went to the family to which such deceased person belonged; *e. g.*, the children of Elizabeth Carn, living at the death of the life tenant, took one-eighth under the devise to them, and another eighth in right of their uncle, Jacob

Carn, who died before the life tenant, leaving no issue, under the last clause of the above quotation from the will. This conclusion was based upon the rule that where there is a devise to several ascertained individuals, and to a class of individuals to be ascertained on some future event, that class will take a share equal to that of each of the ascertained individuals, and no more; and if any of the persons included in the unascertained class died before the period for distribution arrived, their interests did not so vest as to be transmissible to their representatives; and Harper, J., says that it was upon this principle that the case of *Cole* v. *Creyon, supra,* was decided.

It will be observed that there is this striking difference between the case now under consideration and both of the cases above cited; for in both of them the devise was to the children of Elizabeth Cole or Carn, a person then living and capable of having other children, and hence the individuals of the class comprehended in the words "children of Elizabeth Cole or Creyon" could not possibly be ascertained; but in our case the remainder was to the children of Dorcas Brown by her late husband, J. R. Berry, and, therefore, the persons entitled in remainder did not constitute a class of *unascertained* persons, but were as clearly designated as if they had been mentioned by name; for it would be impossible that Dorcas Brown could have any other children by her deceased husband, than those who were in existence at the time the deeds were executed. So, also, the reason of the rule which Chancellor Harper applied in *Conner* v. *Johnson* and in *Cole* v. *Creyon,* is absent here, for he says: "It depends on this, that the different interests must vest at different times. The shares of the ascertained individuals must vest at the death of the testator [or where the question arises under a deed, at the execution of such deed]; that of the unascertained individuals cannot vest until the event happens by which they are to be determined, and upon any other construction it would be impossible to determine what interest did vest at the testator's death." The fact that in speaking of the case of *Cole* v. *Creyon,* he takes care to say that the devise was to the children of Elizabeth Cole, *"who was still living"* (italics ours), indicates that he had in his mind the distinction which

we have pointed out. Indeed, we do not see why a devise to children of a deceased person or to children of a woman by her deceased husband, does not as plainly ascertain and designate the persons intended to take, as if such children had been mentioned by name. But a devise to the children of a person *"who was still living,"* would not as clearly designate and ascertain the persons intended to take, as if they were mentioned by name, for the obvious reason that such person might have other children.

In *Bankhead* v. *Carlisle*, 1 Hill Ch., 357, the testator, after having given specific legacies to his ten children, by name, of whom Gideon Glenn was one, gave certain property to his wife for life or during widowhood, "which said property I wish and devise, at the marriage or death of my wife, to be equally divided amongst my children as above named," &c. Gideon, the son, survived the testator, but died before the widow, and the question was whether he took a vested or contingent interest under the above clause of the will. Johnston, Ch., in the Circuit decree, which was simply affirmed by the Court of Appeals, says: "Gideon, by surviving the testator, was in a condition to take under the will whatever passed by the will. The will gave him a portion of the property, with a direction that it be allotted to him on his mother's death. He could have taken it the day of his father's death, and was withheld only by the preferable right of enjoyment, which the will conferred on his mother. Nothing but that prevented him. Here, then, was a present capacity to take whenever the possession should become vacant. This is the test of a vested interest; and an interest vested is not lost by the dying of the person in whom it exists (vests?) before the period of its being actually enjoyed—that only transmits, in the case of realty, to his distributees or legatees, and in the case of personalty to his representative." The distinguished Chancellor then proceeds to comment upon the cases cited to sustain a contrary view, and says they were cases in which the remainders were *to such of the children as should be alive at the termination of the particular estates* (italics ours), or, we may add, cases like the present, where the provision was that the issue of a deceased child should take, by representation, the parents' share; and says that in such cases the issue of a de-

ceased child could not take through their deceased parents, for the obvious reason that in the class of cases referred to by the Chancellor, the deceased parent not being alive at the termination of the particular estate, did not fill the description of a devisee, and hence could not take any estate, and hence could not transmit any to his issue. And in the class of cases which we have added, the deceased child could not take any estate, if he left issue; because, by the express terms of the will or deed, such issue was substituted for him as devisee; but if he died leaving no issue, there was no one substituted in his place as devisee, and nothing to divert the estate previously vested in him.

*Rutledge* v. *Rutledge*, Dudley Eq., 201, was a case very much like the case under consideration. In that case, John Harleston, in consideration of an intended marriage between his daughter, Jane, and Edward Rutledge, conveyed certain property to trustees, to be held by them in trust for the joint use of the said Edward and his intended wife, Jane, and the survivor of them for life, "and after the decease of both the said Edward and Jane, then to and for the use of such issue as she, the said Jane, may have by the said Edward Rutledge, to be divided amongst them share and share alike, if more than one; but if it should so happen that there should be no issue of the said marriage, or if such issue should die during the lives of the said Edward and Jane, or of the life of the survivor of them, then to the use of such survivor, his or her heirs and assigns, forever." The immediate issue of the marriage were seven children, three of whom predeceased both their father and mother, intestate, unmarried, and without issue. The father then died, leaving his wife, Jane, and four children surviving. Of these four children, two died in the lifetime of their mother intestate, unmarried, and without issue; the other two also died during the lifetime of their mother, one of them, Edward, leaving a widow and six children, the other, Nicholas H., leaving a widow, but no issue. The widow, Jane, then died, leaving no other issue of her body surviving but the six children of her son, Edward. The principal question in the case was whether the children of Edward, who were the only issue of the original marriage living

at the time of the death of the surviving life tenant, took the whole estate, or whether the representatives of Nicholas H. were entitled to share in the estate in remainder; and this depended upon the question, whether the immediate issue (the children) of the original marriage took, as they were respectively born, vested and transmissible estates; and it was held that they did, and hence that the representatives of Nicholas H. were entitled to come in.

That case, it will be observed, goes much further than we are asked to go in the present case. For there none of the issue of the marriage of Edward and Jane Rutledge were *in esse* at the time of the execution of the deed under which the question arose, while in our case all of the children of Dorcas Brown by her late husband, J. R. Berry, were *in esse* at the time of the execution of the deeds, and, as said substantially by Johnson, Ch., in *Bankhead* v. *Carlisle, supra,* were in a condition to take under the will whatever passed by the will. The deed gave them a portion of the property, with the direction that it be allotted to them on the death of the surviving life tenant. They could have taken on the day of the execution of the deed, and their possession was only postponed to the preferable right of enjoyment, which the deed conferred upon the life tenants. Nothing but that prevented them. There was, therefore, a present capacity to take whenever the possession should become vacant—and this is the test of a vested interest, which is not divested by the death of the persons in whom such interest vest before the period fixed for the actual enjoyment thereof, unless, we may add, the will or deed contains some other words to that effect—as, for example, in our case, where the deed provides that the issue of a deceased child shall take by representation or substitution the parents' share.

In *Bentley* v. *Long,* 1 Strob. Eq., 43, the testator gave his whole estate to his wife during her life or widowhood, ''and at her death or marriage to be equally divided amongst our children,'' and one of the questions in the case was, whether the children took a contingent interest, dependent upon their surviving the widow, or a vested transmissible interest, to take effect, in possession, on her death. Held, that the interests of

the children living at the death of the testator were vested and transmissible, upon the authority of *Bankhead* v. *Carlisle, supra,* although the children were named in the will in that case, and were not named in *Bentley* v. *Long.* This, no doubt, was for the reason that the children of testator living at his death were as clearly ascertained as if they had been designated by name.

In *Wessenger* v. *Hunt,* 9 Rich. Eq., 459, the testator gave his estate to his wife for life, "and at her death, it is my will and desire that the estate which may be then in being for her support be equally divided amongst my children and grand-children," excluding some of them by name. One of the children died, after the testator, but before the life tenant, leaving no issue, and, amongst other things, it was held that such deceased child took a vested transmissible interest—Wardlaw, Ch., in his Circuit decree, which was affirmed by the Court of Appeals, saying: "It is clear, on authority, that the children and grand-children of testator living at his death took vested interests in the remainder, transmissible to their representatives, subject to diminution by increase of the objects of bounty, or, in other words, vested estates, opening to let in all of the classes who might come into existence before the period of distribution."

In *Wilson* v. *McJunkin,* 11 Rich. Eq., 527, the testator gave certain property to trustees for the sole and separate use of his daughter, Nancy, "for and during the term of her natural life, and at her death to be equally divided amongst her children in fee simple." One of the children of Nancy, who was *in esse* at the time of testator's death, intermarried with one Thomas Wilson, and gave birth to a child, who died, in the lifetime of the mother, very soon after birth. The mother then died, leaving no issue, but leaving her husband, Thomas Wilson. The life tenant then died, and the main question in the case was, whether the husband, Thomas Wilson, was entitled to share in the estate in remainder; and this depended upon the question, whether his wife took a vested estate under the will of the testator. Held, that she took a vested estate, transmissible to her heirs and distributees, and hence that the husband was entitled to share in the estate in remainder.

In *Haynsworth* v. *Haynsworth*, 12 Rich. Eq., 114, the donor, by deed, gave to a trustee certain property, "in trust, to and for the sole use of my said grand daughter (Mary), wife of the said Henry Haynsworth, during her natural life, and after her death to and for the use of the said Henry Haynsworth for and during his natural life, and after his death to and for the use of the children born, or hereafter to be born, of my said grand-daughter, and their heirs, share and share alike; but should my said grand-daughter and the said Henry Haynsworth *both* die without leaving children living at the time of their decease, born of the said Mary, then over to certain other grand-children. Mary Haynsworth died, leaving her husband, Henry, and one child surviving her; and the child then died, leaving his father, Henry, surviving him. It was held that such child took a vested and transmissible estate, which became indefeasible upon the death of his mother, Mary, leaving him surviving. In his Circuit decree, which, upon this point, was concurred in by the Court of Appeals, Carroll, Ch., cites with approval *Rutledge* v. *Rutledge, supra,* and, also, *Smither* v. *Willoch,* 9 Ves., 233, which last named case will be more particularly considered when we come to consider another point in this case. Johnstone, Ch., in delivering the opinion of the Court of Appeals, uses these words, which, it seems to us, are appropriate to the present case: "A vested interest has the quality of transmissibility, and is not defeated by the death of the tenant. It is not to be taken away, except upon the occurrence of some event which, by the terms of the grant or a just construction of the instrument, was intended to terminate that interest."

In *Dickson* v. *Dickson,* 23 S. C., 216, the testatrix gave certain property to her two daughters, Louisa and Amelia, "for their own use and benefit during the term of their natural lives, and upon the death of either, leaving issue, such issue shall take their parent's share at marriage, or upon arriving at age, absolutely and forever. But in default of such issue, then the property so given to go to my three sons, share and share alike; or, in case of the death of any of them at that time, to and among their then surviving children, such children col-

lectively taking their parents' share." The two daughters
above named and the three sons, James, John, and Joseph,
survived the testatrix, but all of them died during the lifetime
of the life tenant, Amelia—two of them, James and John, leav-
ing issue, and the third, Joseph, leaving no issue. The life
tenant, Amelia, then died without issue, and the question was,
who were entitled to the property left by such life tenant?
Was it divisible into two equal shares, one of which would
go to the children of James and the other to the children of
John, or was it divisible into three equal shares, two of which
would go to the children of James and John as above, and the
other to the representatives of Joseph? It was held, that
though the interests of the three sons were not vested but con-
tingent, by reason of the fact that they were dependent upon
the uncertain event of Amelia dying without issue, yet they
were, nevertheless, transmissible, and that the representatives
of Joseph were entitled to one-third of the estate in remainder.
So that, even if it could be held that the children of Dorcas
Brown by her late husband, J. R. Berry, took contingent and
not vested interests, it would not necessarily follow that such
interests were not transmissible. But the case is cited mainly
for the purpose of confirming what we have hereinbefore said
as to the gift to these children not being a gift to a class of un-
ascertained individuals; for, as said by Judge Fraser, in his
Circuit decree, in *Dickson* v. *Dickson,* upon the authority of
1 Jarm. on Wills, 534 (edit. of 1880): "A gift to persons as a
class is a gift of an aggregate sum to a body of persons *uncer-
tain in number* at the time of the gift, to be ascertained at a
future time. The gift here to the three sons, a definite number
of persons, is just the same as if they had been called by name
in the will." And, as is said by Simpson, C. J., in delivering
the opinion of this court, after referring with approval to what
Judge Fraser had said: "Here the gift was not to a body of
persons uncertain in number, and to be ascertained at a future
time; on the contrary, it was to three sons of the testator, alive
at the time of the execution of the will, and the direction was,
that the property should go to these three sons, share and share
alike, upon the death of the life tenant leaving no issue. Cer-

tainly it could not be contended that if the testatrix had named the sons, each to be entitled to a share upon the contingency specified, that in such case the doctrine as to the gifts to a class would apply, excluding such as were not in existence at the happening of the contingency, and giving the whole estate to such only as were then in being; and yet the language used seems to us to exclude the idea of a class as fully as if the sons had been named individually."

The case of *Doe ex dem. Barnes* v. *Provoost,* 4 Johns., 60, may be also cited.   There the testator devised certain real estate to his daughter, Christiana, for life, "and immediately after her death, I give the same unto and among all and every such child and children as the said Christiana shall have lawfully begotten at the time of her death, in fee simple, equally to be divided between them, share and share alike."   Christiana had four children at the time of the making of the will, and at the time of the death of the testator, and one of them, Catherine, died before her mother, leaving the lessors of the plaintiff her heirs at law.   The court held that the said Catherine took a vested remainder, which descended to her heirs, and hence the plaintiff was entitled to recover.   Spencer, J., dissented, holding that Catherine's remainder was contingent upon her surviving the life tenant.   The ingenious suggestion made by counsel for respondent in this case, that the decision was right, because the limitation was to every such child and children as Christiana may have lawfully begotten (not such as she should leave living at her death), and was in fee simple, seems to have escaped the attention as well of the very eminent counsel who argued that case as of the very able court which decided it, for their decision is not based upon any such ground. ·

In *Gourdin* v. *Deas,* 27 S. C., 479, real estate was conveyed by deed to a trustee, "in trust for Eliza C. Deas, * * * and after her death to her issue, to take *per stirpes* his [held to be a clerical error for "their"] heirs and assigns, to his and their use, benefit, and behoof, forever."   *Held,* that Eliza took an estate for life, with a vested and, therefore, a transmissible remainder to her immediate issue, which was held to mean "children,"

or, they being dead at the time the life estate fell in, their children by representation; and consequently the share of a child who predeceased the life tenant, leaving no issue, passed to the heirs or devisees of such child.   That case is, therefore, very much like the case under consideration, and seems to be conclusive, if the interpretation of the word "issue" there adopted be correct, as we must assume it was.   Indeed, this case is stronger than that, for here the remainder is expressly to the *children* of Dorcas Berry by her late husband, James R. Berry—"the issue of a deceased child taking by representation the parent's share"—which, according to the authorities, must be held to mean, "the *child or children*" of a deceased child taking by representation the parents' share; for, as is said in 11 Am. & Eng. Enc. L., 875, and supported by numerous cases cited in the notes: "When the word issue is used in reference to the parent of that issue, as where the issue are to take the share of the deceased parent, it must mean *his children;* that is, the word parent confines the word *issue* to the children of the [first] taker."

We next mention the case of *McMeekin* v. *Brummet*, 2 Hill Ch., 638, which was inadvertently omitted at its appropriate place.   In that case Wm. Brummet gave two slaves to a trustee in trust for the use of his daughter, Comfort Perry, and the heirs of her body; but should the said Comfort die without children to heir the said negroes, then the said negroes are to return to the sons of Spencer and Daniel Brummet and their heirs, forever."   At the time this gift was made Spencer Brummet had one son, who was the defendant in the case, and Daniel Brummet had one son, William, who predeceased both the donor and the said Comfort, leaving no issue. Upon the death of Comfort without issue, a question arose as to who were entitled to the negroes and their increase, the defendant claiming the whole, and the plaintiff, as administrator of William, the deceased son of Daniel Brummet, claiming one-half.   Harper, Ch., delivered the decree of the Circuit Court, which was adopted by the Court of Appeals, holding that the limitation "must be construed to the sons of Spencer and Daniel Brummet, *then* living—as if it had been, in terms,

to F. K. Brummet, son of Spencer Brummet, and William Brummet, son of Daniel Brummet;'' and he, therefore, adjudged that plaintiff, as the representative of the deceased son, William, was entitled to one-half of the estate in remainder. That distinguished Chancellor in delivering the Circuit decree uses this language, which, it seems to us, is directly applicable to, and is in fact conclusive of, the case in hand—at least, so far as the shares of such of the children of Dorcas Brown by her first husband, who predeceased the surviving life tenant, *leaving no issue*, are concerned. He said: ''So if these slaves had been given to Comfort Perry for life, remainder to the sons of Spencer and Daniel Brummet, I take it to be equally clear that there would have been a vested remainder in the sons of Daniel and Spencer Brummet, who were living at the time of the gift,'' which, of course, as was held in that case, would be transmissible to the representatives of any deceased son.

From this review of the authorities, as well as from a careful examination of the language used in the deeds which we are called upon to construe, it seems to us that the children of Dorcas Brown by her late husband, J. R. Berry, all of whom were *in esse* at the time of the execution of the deeds, took vested transmissible estates in remainder, liable to be divested only by their death during the lifetime of the surviving life tenant *leaving issue;* in which event such issue, by the express terms of the deed, were substituted in their place, but that the estates of those of the said children who predeceased the surviving life tenant, *leaving no issue*, remained vested and transmissible to their representatives, inasmuch as the only event upon which their vested interest should become divested never occurred. This view is sustained by the case of *Smither* v. *Willoch*, 9 Ves., 233, *supra*, cited with approval in *Haynsworth* v. *Haynsworth*, 12 Rich. Eq., 114, *supra*. There the testator gave certain property to his wife for life, ''and from and after her death the capital to be divided between the testator's brothers and sisters, named in the will, in equal shares; but in case of the death of any of them in the lifetime of the wife, the shares of him or her so dying to be divided between all and every his or her or their children.'' One of the brothers

died in the lifetime of the widow, leaving no issue. *Held*, that the share of such deceased brother was vested, "subject to be divested only in the event of his death in the lifetime of the testator's widow, leaving children; and, consequently, that event not having happened, his representative was entitled." To the same effect, see *Harrison* v. *Foreman*, 5 Ves., 207, as well as the language of Johnstone, Ch., hereinbefore quoted from his opinion in the case of *Haynswarth* v. *Haynsworth*.

We think, therefore, that the Circuit Judge erred in excluding the defendants, J. D. Blanding and J. E. Baumgartner, from any share in the remainder. One of these persons claims by purchase, and the other by inheritance, the shares of children of Dorcas Brown by her first husband, who predeceased the surviving life tenant, *leaving no issue;* and as we have held that these shares were vested and transmissible interests, these defendants, now the owners thereof, are entitled to claim the same.

We agree, however, with the Circuit Judge that the devisees of John Richardson and Mrs. Octavia H. Moses must be excluded. These defendants claim by purchase the shares of two of the Berry children, who died during the lifetime of the surviving life tenant, *leaving issue,* or children, as that word must be construed, as we have seen above, and by the express terms of the deed such issue or children are substituted in the place of their parents. While, therefore, nothing has occurred to divest the vested interest of such of the children as have died during the lifetime of the surviving life tenant, *leaving no issue*, the very event upon which the vested interest of such of the children as have died *leaving issue* was to be divested having occurred, such interests became divested, and those who claimed such interests by purchase must give way to those who have been substituted in their stead.

As to the only remaining question, the liability of the plaintiff, Julia A. Bracy, to account for rents and profits, it is only necessary to say that the only parties who set up any claim to such an accounting by the pleadings or in the Circuit Court, have been adjudged to be not entitled to

any portion of the property, and, of course, they would not be entitled to any account for rents and profits. For it is stated in the "Case" that "an accounting for rents and profits was claimed against Julia A. Bracy only by John S. Richardson and Octavia H. Moses." It is true, that the defendant, J. E. Baumgartner, by one of his grounds of appeal does impute error to the Circuit Judge in refusing an account for rents and profits. But, to say the least of it, there may be a question as to whether that was sufficient. Waiving this, however, the question seems to have been treated by the Circuit Judge as one of fact, and, where that is the case, we are not disposed to interfere with the conclusion of the court below, especially in a case like this where the testimony is so meagre, and at least leaves room for a doubt whether Mrs. Bracy, one of the tenants in common, used more than her share of the land, or, rather, whether such use was worth more than the taxes which she paid on the whole of the land.

The judgment of this court is, that the judgment of the Circuit Court be so modified as to conform to the views herein announced, and that the case be remanded to that court for such further proceedings as may be necessary.