15750

FIRST NATIONAL BANK OF HOLLY HILL v. BENNETT
*ET AL.*

(34 S. E. (2d), 678)

*Messrs. Felder & Rosen,* of Orangeburg, S. C., Counsel for Appellant,

*Mr. C. E. Summers,* of Orangeburg, S. C., Counsel for Respondent,

July 12, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

This appeal requires the construction of the residuary clause of the will of the late A. B. Bennett of Holly Hill, Orangeburg County. It is as follows:

"Ninth: All the rest, residue and remainder of my Estate, real, personal, and mixed, and wheresoever situate, including all property that I own in co-partnership with my brother, B. R. Bennett, and all insurance policies made payable to my Estate, except the one otherwise disposed of, and all property of which I may die seized and possessed, or to which I might be entitled at the time of my decease, I give, devise, and bequeath unto the persons hereinafter named as my Executors, in trust, for the benefit of my children, the same to be held by the said Trustees, and the survivors and survivor of them, to be disposed of or sold by them, at public or private sale, at such times and on such terms and conditions as they may deem best, and to execute and deliver such transfers, assignments and deeds of conveyance as may be necessary, and to then divide the proceeds among my children, share and share alike, the child or children of any deceased child to take the parent's share. In this connection, I may say by way of suggestion, and not command, that I think it might be advisable, for my Trustees to hold some of this property for a period of five years or even longer."

Testator died August 23, 1939, and his will, dated August 5, 1939, was thereafter probated. In it there were named as executors and trustees the First National Bank of Holly Hill, I. Witte Bull, B. R. Bennett (testator's brother, since resigned), and Douglas A. Bennett, his son, who qualified and entered upon their duties.

If it were necessary to define the interests given the children of testator by the quoted residuary clause, the following words of Mr. Justice Cothran, author of the opinion in *Torre v. Chesnut,* 159 S. C., 282, 156 S. E., 906, 907, 74 A. L. R., 540, would be appropriate: "Strictly speaking, the provision in the will in favor of W. T. Chesnut is not a pecuniary legacy, but a beneficial interest to the extent of $30,000.00, in a trust fund in the hands of the executors as trustees, the fund being the proceeds of a conversion into money of all of the estate that remained after taking care of the specific devises and specific legacies provided for in the preceding portion of the will."

The son, Douglas A. Bennett, died November 26, 1943, leaving no children, but his widow, Sarah P. Bennett, survied and is the sole beneficiary of her husband's will. Claim was made by her as such to the undistributed portion of the residue (which would have been paid to her husband had he lived out the period of distribution). The Circuit Court held against the widow's (the appellant's) contention and, in effect, that the shares of the residue of the estate did not vest in the children of testator living at the time of his death and that the gift to each was contingent upon his surviving the time of distribution so that the remainder of this devise or legacy to the deceased son, Douglas, lapsed at his death and, therefore, did not pass to appellant under his will. And the decree under appeal went further and adjudged, not that the "lapsed" portion was intestate property, but that appellant had no interest in it at all.

It is elementary that a testator's intention shall govern if not in conflict with law and that it will be found after consideration of the entire will, if other portions than that under examination throw light. Let us then briefly examine the other items of the will, from none of which, we think, can support be fairly found for the construction adjudged by the lower Court.

Certain parcels of real estate in the City of Greenville and in Holly Hill were devised by testator to his daughter, Janie Hawthorne, and her daughter and any other children of her present marriage, to be divided equally when the youngest child of this daughter should become twenty-one, meanwhile the property shall remain in the hands of the executors and trustees for the benefit of these devisees.

The home place of 209 acres, the residence and contents, were devised and bequeathed to Douglas for life, quoting, "and after his death to his children, should he have any—I mean the children of his own flesh and blood, not adopted children, but should Douglas leave no children at his death, then this home place is to revert to my estate and be divided among my children and grandchildren, share and share alike, after the youngest of my grandchildren becomes twenty-one years of age * * *." The furniture, silverware and all other property in the home were also given to Douglas for life and thereafter to his children, if any, but should Douglas leave no children, then the furniture and other contents of the house should go to testator's daughter and her daughter. There were other devises of considerable real estate to Douglas in which testator specified that the property should go to him in fee.

Unto another son, Heyward, devises were made of several parcels of real estate and to, quoting, "his children, Emily Heyward Bennett and Caroline Bennett, and any other lawful children of his own flesh and blood, that he might have, but not adopted children * * *, share and share alike," upon condition that the executors, as trustees, hold said property until Heyward's youngest child shall become twenty-five years old, then distribute it, or the proceeds, meanwhile paying out the income for the benefit of Heyward and his children, particularly for the education of the latter.

Other real estate was devised to the third son, Nolan, and his children, who were named, and, quoting, "any other lawful children of his own that he might have, and not

adopted children," share and share alike, but in trust to the executors until Nolan's youngest child shall become twenty-five years of age, when the property or its proceeds shall be distributed, meanwhile income to be used for the benefit of these beneficiaries.

Attention is called again to the provision of the residuary clause wherein it was expressly contemplated that the executors and trustees should move slowly in disposing of the assets coming within its terms, suggesting even that they might take five years or longer for an orderly liquidation. But there was no gift over, cross-gift or substitutional interest created in case of the death childless of a child during distribution, any one of which would indicate contingency and would serve to annex futurity to the substance of the gift. On the contrary, the will is barren of evidence of an intention to suspend the gifts contained in the residuary clause upon the contingency of survival of the donees to the date of completion of the distribution. They needed only to survive until the death of testator—the substitutionary gift to the respective children of the children of testator was effective only if any of testator's children predeceased him. See in contrast, *Youmans v. West*, 203 S. C., 480, 28 S. E. (2d), 47.

It is plain, upon consideration, that the trust in the residuary clause was to provide a careful and deliberate liquidation of the assets and insure the realization of their full value, rather than that they be possibly sacrificed by sale for division of the proceeds within the usual administration year. Therefore, the delay provided was for the benefit of the estate and the beneficiaries (not to their detriment) and not to create a period of possible forfeiture by the death childless of a donee.

There is a codicil to the will containing the following in further connection with the residue of the estate, commencing as follows: "When the trustees of my estate are ready to distribute the residue of my estate as provided for

in paragraph ninth of my will," etc., which denotes again the judicious manner in which testator intended that the trustees should liquidate and distribute the property which constituted the residue. As indicated above, there was partial distribution resulting from administration before the death of Douglas and his distributive shares were paid to him in his lifetime. This litigation relates only to the remaining portion of the residue, that not distributed in his lifetime. It does not appear in the record what proportion was so paid over before Douglas' death, but it was said in oral argument that possibly a third or a half remains to be distributed and will, therefore, be affected by this decision.

Unchallenged is the following finding and conclusion of the Circuit Court: "Although Douglas was married, he had no children and testator knew that in all probability Douglas would not have children and therefore, in trying to equalize the portions between his children gave some property to Douglas in fee simple." This is but another way of saying that testator was concerned lest Douglas (the only one of his children in whom he confided the trust of executorship) fare too poorly under the will because he had, and would probably have, no children. From that consideration we deduce, contrarywise to the Circuit Court, that testator did not intend to defeat Douglas' interest in the residue because perchance he die childless pending distribution. Had he any such intention, is it not reasonable to suppose that he would have expressed it, particularly because he had expert legal advice and assistance in the preparation of the will as it, in effect, recited? There was such an express provision for defeasance by death during administration in *Youmans v. West, supra.*

Authority for the indicated construction is found in the following former decisions of our Courts: *Taveau v. Ball,* 1 McCord Eq., 7; *Boykin v. Boykin,* 21 S. C., 513; *Brown v. McCall,* 44 S. C., 503, 22 S. E., 823; *Rutledge v. Fishburne,* 66 S. C., 155, 44 S. E., 564, 97 Am. St. Rep., 757;

*Fishburne v. Sigwald,* 79 S. C., 551, 60 S. E., 1105; *Wicker v. Wicker,* 70 S. C., 33, 49 S. E., 10; *Walker v. Alverson,* 87 S. C., 55, 68 S. E., 966, 30 L. R. A. (N. S.), 115; *West v. Smith,* 89 S. C., 540, 72 S. E., 395; *Tindal v. Richbourg,* 91 S. C., 404, 74 S. E., 932; and *Pearson v. Easterling,* 107 S. C., 265, 92 S. E., 619, Ann. Cas., 1918-D, 980.

The most, if not all, of these cases involved remainders after life estates, a more complicated situation than that of the instant case, but the principle is the same. This case might well be rested upon the hornbook rule that a will speaks (takes effect) as of the death of the maker, which is its effective date. And a donee thereunder takes immediately in the absence of qualifying language in the will, and there is none here except the trust for liquidation and distribution of the residue. The gift was "to my children," of which Douglas was one when the will became effective; and the added clause, "the child or children of any deceased child to take the parent's share," may properly be disregarded for the simple but cogent reason that there was no "deceased child" when the will spoke.

Confirmation of the view herein expressed, and enunciated in the above-cited decisions, may be found in 33 Am. Jur., 603; and there is an elaborate and interesting annotation in 109 A. L. R., beginning at page 5. The subject case, *Plitt v. Plitt,* 167 Md., 252, 173 A., 35, reported at 109 A. L. R., 1, is very similar to the case in hand. Reviewed in the annotation are all of our decisions in point, rendering unnecessary a present discussion of them.

The conclusion is that the children of testator, all of whom were living at the time of his death, took vested, transmissible interests in the residue of the estate; hence the judgment appealed from is reversed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.