### 17615

Nathaniel GIST, JR., Lucy W. McCaughrin, Margaret G. McCaughrin, Albert G. McCaughrin, Laura McCaughrin Pickens, Margaret McCaughrin Killingsworth, Elizabeth McCaughrin Haltiwanger, Mary Butler Fant Holmes, Nicholas S. Holmes, Owen McR. Holmes and Nancy Harper James, Appellants, v. Frances Harper BROWN and the Birmingham Trust National Bank as Executor of the Last Will and Testament of Ione Fant McCaughrin and as Trustee under the Last Will and Testament of Ione Fant McCaughrin, deceased, of which the Birmingham Trust National Bank is, Respondent.

(113 S. E. (2d) 75)

*Messrs. Thomas H. Pope* and *Eugene S. Blease,* of New-berry, *for Appellants,*

*Messrs. Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, *for Respondent,*

February 10, 1960.

STUKES, Chief Justice.

The question to be determined in this case is whether the devise to Robert, the grandson of the testator, was a vested remainder or a remainder contingent upon Robert's survival of his father. It was contained in the ninth item of the will of Robert L. McCaughrin, which follows:

"I give, bequeath and devise my 'Dairy Farm' house and buildings, and one hundred acres of land with the house, (the land to be selected by my son, S. J. McCaughrin) with such of the outfit on said place as I may own, to my said son, S. J. McCaughrin, his wife, and his son, Robert and such other child or children as may be born to the said S. J. McCaughrin, for and during the term of his natural life, and at his death, one-third of said place to the wife of S. J. McCaughrin surviving him, and remaining two-thirds, to be equally divided among his children, the child or children

of a predeceased child taking the share his or their parent would have taken. The disposition of this place as above indicated is for the benefit of the wife and children of the said S. J. McCaughrin, and is in no case to be subjected to his debts. In case he should leave no wife surviving him, then the whole place is to be divided among his children as above indicated."

The testator died on January 27, 1896. Robert, the devisee, died July 1, 1896, at about four years of age, survived by his father and mother as his sole heirs at law. The only other child of his parents had died in 1894. Robert's father, S. J. McCaughrin, predeceased his wife, Robert's mother, leaving a will by which he devised all of his property to his wife. She died in 1955 leaving of force her will by which she devised the property in controversy in this action (which was substituted for the "Dairy Farm" by a former judicial proceeding) to the respondent bank as trustee. The trial court held that the questioned estate was a vested remainder which was inherited by the parents of the devisee upon his death intestate and passed perforce their respective wills to the bank as trustee.

The other parties to the action have appealed and contend that the remainder was contingent upon Robert's survival of his father, the life tenant, and upon that failure and upon the falling in of the life estate the remainder interest reverted to the estate of the testator and passed under the seventh and eighth items of his will. They provided that after payment of debts and legacies the residue of the estate should be divided into seven equal shares to his six children and one grandson, except that the share of S. J. McCaughrin should be charged with $3,500.00 (and advances theretofore made to him) which was the testator's valuation of the "Dairy Farm" devised in the ninth item, quoted in full above. It is seen that these other provisions of the will throw no light upon the nature of Robert's remainder.

It is elementary that a testator's intention, as expressed in his will, will govern in the construction of it if not in conflict with law or public policy; and it will be ascertained upon consideration of the entire will. However, "in looking for this intention we must be guided by the words which the testator has used, reading them in the light of established principles of law"—per Mr. Justice (afterward Chief Justice) McIver in *Faber v. Police,* 10 S. C. 376, 386. The latter is necessary in the interest of the stability of the law which is especially desirable in the law of property. By many decisions it has been uniformly held that the language used by the instant testator in the ninth clause of his will, quoted *ante,* created a vested remainder. A contingent remainder would have been created if Robert's survival of his parents had been added as a condition as it was with respect to his mother surviving his father but, with apparent discrimination, that condition was omitted with respect to the gift to Robert. Some of the decisions alluded to are: *Taveau v. Ball,* 1 McCord Eq. 7; *Boykin v. Boykin,* 21 S. C. 513; *Gourdin v. Deas,* 27 S. C. 479, 4 S. E. 64; *Brown v. McCall,* 44 S. C. 503, 22 S. E. 823; *Rutledge v. Fishburne,* 66 S. C. 155, 44 S. E. 564, 97 Am. St. Rep. 757; *Woodley v. Calhoun,* 69 S. C. 285, 48 S. E. 272; *Wicker v. Wicker,* 70 S. C. 33, 49 S. E. 10; *Fishburne v. Sigwald,* 79 S. C. 551, 60 S. E. 1105; *Walker v. Alverson,* 87 S. C. 55, 68 S. E. 966, 30 L. R. A., N. S., 115; *West v. Smith,* 89 S. C. 540, 72 S. E. 395; *Pearson v. Easterling,* 107 S. C. 265, 92 S. E. 619; *Wannamaker v. South Carolina State Bank,* 176 S. C. 133, 179 S. E. 896, and *First Nat. Bank of Holly Hill v. Bennett,* 206 S. C. 402, 34 S. E. (2d) 678.

The devise and the facts in *Rutledge v. Fishburne, supra,* [66 S. C. 155, 44 S. E. 565] were substantially the same as in the case *sub judice.* The devise there was: "unto my said daughter, Sophia Sheppard Marion, for life, not subject to the debts of her husband, with remainder to her children, share and share alike, the child or children of a deceased

child to represent and take the parent's share." The conclusion of the court was, quoting from the opinion: "Under the foregoing clause of the will, Mrs. Fishburne (the child of the devisee) took a vested transmissible interest in remainder. If other children should be born unto Mrs. Marion (the devisee) the remainder now vested in Mrs. Fishburne would open so as to embrace such children. If Mrs. Fishburne should die leaving no children, her vested interest would not revert to the estate of Mrs. Wilson (testatrix), but would descend to her (Mrs. Fishburne's) heirs generally, and be subject to distribution under the statute, just as any other property of which she might die seized and possessed."

Others of the above cited cases are very similar to that in hand but this opinion will not be extended to include review of them. Although many of them were cited in the well considered decree of the trial court, appellants made no effort in this court to distinguish them or otherwise argue the inapplicability of them.

In the very recent case of *Woodward v. Cagle,* S. C., 112 S. E. (2d) 480, 481, the devise was "To my son Alexander Cagle, for and during the term of his natural life and at his death to his widow for life and at her death to his children absolutely *per stirpes.* In default of such children the same shall vest in my executors to be disposed of as provided in paragraph Six (6)." Alexander had no children and the question before the court was the disposition of the property under the substitutional devise contained in the last sentence quoted. In the opinion it was said: "It is clear that by Item 5 of his will the testator left a life estate to his son Alexander Cagle, and a succeeding life estate to the widow of Alexander Cagle, and a remainder to the children of Alexander Cagle. This remainder to the children was of necessity contingent since no children were born to Alexander Cagle. If a child had been born to Alexander Cagle, there is no doubt that this remainder would have vested immediately in such child, subject to partial defeasance in the event of the birth of additional children." (As shown by the context, the word

"contingent" in this quotation was not used in its usual technical sense, as describing a remainder, but as conditional upon the birth of a child or children.)

The American Law Institute denominates Robert's remainder under the devise in the instant case as "vested subject to open," Restatement of the Law of Property, 1936, Vol. II, p. 541, and the illustration is: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to the children of B.' B has a child C. C has a remainder vested subject to open and let in other children born to B." Incidentally, the Institute does not apply the adjective "contingent" to remainders for the reasons stated in the same volume, p. 542, "Note on Terminology."

It is conceded that the provision in the will before us, "The disposition of this place as above indicated is for the benefit of the wife and children of the said S. J. McCaughrin, and is in no case to be subjected to his debts," is of no legal effect. *Rutledge v. Fishburne, supra.* It did not create a spendthrift trust; indeed, no trust was created or trustee appointed. Incidentally, the course of events has caused the gift to "benefit" the wife and children (child) of S. J. McCaughrin and not his creditors, but not because of this precatory provision of the will. On the contrary, if appellants' contention should prevail, they would benefit although they were not included in the gift or prayer.

The reference to a spendthrift trust points to appellants' principal reliance in their brief upon the case of *Albergotti v. Summers,* 205 S. C. 179, 31 S. E. (2d) 129, in which there was a valid spendthrift trust, as held in the first appeal of it, reported in 203 S. C. 137, 26 S. E. (2d) 395. That case will be discussed hereinafter.

If the will under construction was prepared by able counsel, as appellants say, the omission of any provision for contingency of the estate devised to Robert and the absence of effective provision for a spendthrift trust are more persuasive of the correctness of our construction than if the will

had been prepared by an unskilled layman. How easy it would have been for skilled hands, if so intended, to have added the requirement of Robert's survival, as was done with respect to his mother's remainder. This thought cannot be better expressed than in the words of Mr. Justice (afterward Chief Justice) McIver again in *Brown v. McCall, supra,* 44 S. C. 503, 512, 22 S. E. 823, 828: "It will be observed that the language is not 'to the use of her children by her late husband (*living at the time of the death of the surviving life tenant*), the issue of a deceased child taking by representation the parent's share,' but the language actually used omits the words which we have placed in parentheses and italicized, the very words which would appropriately express the intention (if it had been entertained) that the interest of any of the then living children of Berry was to be dependent upon the fact that such child should be living at the death of the surviving life tenant."

Recurring to appellants' reliance upon the authority of *Albergotti v. Summers, supra,* 205 S. C. 179, 31 S. E. (2d) 129, we do not think that it is of any material resemblance to the case in hand. There the testatrix created a spendthrift trust and devised the property to trustees for a period of twenty-one years, with power to invade the corpus to maintain the *cestuis que trust*. Division of the property was directed at the end of the trust period among the children of the testatrix *or* to any child or children that they might leave surviving. The bedrock of the decision that the remainders were not vested in the children of testatrix during the trust period was the existence of the spendthrift trust, as is seen upon consideration of the opinion. It was held that a vested remainder would be inconsistent with the whole scheme and purpose of the spendthrift trust. Pointing to the foregoing and other circumstances we were careful to say, quoting from the opinion, 205 S. C. at page 187, 31 S. E. (2d) at page 132: "If all of these circumstances are excluded, the language used would ordinarily tend to create a vested remainder, *Boykin v. Boykin,* 21 S. C. 513; *West v. Smith,*

89 S. C. 540, 72 S. E. 395; *Wannamaker v. South Carolina State Bank,* 176 S. C. 133, 179 S. E. 896." The many distinctions between the *Albergotti case* and this are manifest upon a reading of it and the authority of it is very plainly inapplicable here.

The exceptions are overruled and the judgment affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.