17484

Sybil W. TAYLOR *et al.*, Petitioners-Respondents, v. Henry C. JENNINGS *et al.*, Respondents- Appellants
(106 S. E. (2d) 391)

*Messrs. deLoach, Wilson & deLoach, Jennings & Jennings and Harold W. Funderburk,* of Camden, *for Appellants,*

*Messrs. Savage, Royall & Kennedy,* of Camden, *for Respondents,*

December 15, 1958.

Moss, Justice.

This action was instituted by the respondents against the appellants for the partition of a tract of land containing 228 acres located in Kershaw County, South Carolina. The respondents allege that they own a one-fifth undivided interest and the appellants own a four-fifths undivided interest in said tract of land. The prayer of the complaint is for partition in kind or, in the alternative, that the premises be sold and the proceeds divided in the aforementioned proportions.

J. W. Watkins, late of Kershaw County, died testate on July 16, 1929, leaving of force and effect his last will and testament dated February 6, 1929, which was validly executed and duly admitted to probate on October 11, 1929, in the Probate Court for Kershaw County, South Carolina. J. B. Watkins applied for and was granted Letters of Administration, *Cum Testamento Annexo,* for the reason that the executor named in the said will failed or refused to qualify as such.

In due time, the appellants filed an answer to the complaint denying that the respondents had any interest in the property in question, and alleging that they owned a full fee simple title to the tract of land. They also assert that the premises in question were returned, for the purposes of taxation, in the office of the Auditor of Kershaw County as the property of the "Estate of J. W. Watkins" for the years 1929 through 1936. It is then alleged that the Sheriff of Kershaw County did levy upon, advertise and sell the said premises as property of the "Estate of J. W. Watkins", a defaulting taxpayer, to one A. S. Cook, and that on December 3, 1936 the said Sheriff did execute and deliver to the said A. S. Cook a deed conveying the premises described in the complaint herein to him upon his paying the consideration of $206.28. It is then asserted that by successive deeds a fee simple title was perfected in the appellants, and that the respondents have no interest in the premises mentioned in the complaint. Attached to and forming a part of the answer was the will of J. W. Watkins.

It is undisputed that under the will of the late J. W. Watkins, the tract of land in question was devised equally to H. L. Watkins, J. B. Watkins, Mrs. L. C. Brannon, Mrs. R. W. Vaughn and Mrs. R. E. Thompson, for and during their natural life, with remainder to the heirs of their bodies. It is undisputed that under said will J. B. Watkins took a life estate in an undivided one-fifth interest in said tract of land, and that at his death his children, as heirs of his body, would have been entitled to an undivided one-fifth interest in said

tract, in fee simple, except for the aforementioned tax sale. It is also admitted that J. B. Watkins, the life tenant, died March 10, 1956, leaving as the heirs of his body, the respondents herein. It is further admitted that J. B. Watkins entered upon his duties as Administrator *Cum Testamento Annexo* of the estate of J. W. Watkins on October 11, 1929, and continued to act in such capacity until January 2, 1937 when he asked for his discharge. Although it appears that Letters Dismissory were sought by the said J. B. Watkins, none were ever issued by the Probate Court. It was verbally stipulated that the facts of the case, of which the foregoing is a summary, were not in dispute, and the question for decision was the effect of the tax title set up in the answer.

The respondents demurred to the answer of the appellants upon the grounds that it appears upon the face of the answer (1) that at the time of the tax sale mentioned in the answer the respondents owned the premises sold as remaindermen, thus making any tax sale ineffective as to their interest during the continuance of the life estate; (2) that at the time of the tax sale the duty was on the life tenants to pay the taxes, and that as a matter of law the interests of the respondents, as remaindermen, were not affected by reason of the failure of the life tenants to pay said taxes.

The demurrer was argued before the Honorable Bruce Littlejohn, the presiding Judge, and he did by his Order dated June 26, 1958, sustain the demurrer, and held that the tax sale and the deed relied upon by the appellants was invalid insofar as the rights of the respondents herein were concerned. He held that the respondents were entitled to a partition of the premises described in the complaint. The case is before this Court upon an exception charging the lower Court with error in finding and concluding that the tax sale and deed relied upon by the appellants was invalid as to the rights of the respondents. It is asserted that he should have found that the tax sale and deed mentioned conveyed the entire fee in the premises to the appellants. Stated another way, the question for determination is whether the levy upon

and sale of the premises as the "Estate of J. W. Watkins", and the deed of the Sheriff made pursuant to such levy and sale were sufficient to convey the fee simple title to said premises.

A summary of the law pertaining to tax sales is required for the proper consideration and disposition of the question here raised. The tax statutes referred to will be given as is contained in the 1952 Code of Laws since there has been no amendment thereto necessary to be considered, even though the statutes as contained in the 1932 Code were applicable at the time of the tax sale here involved.

It is provided in Section 65-1611 of the 1952 Code of Laws, as follows:

"Every person shall be liable to pay taxes and assessments on the real estate of which he may stand seized in fee *or for life,* in dower or as husband in right of his wife or may have the care of as guardian, executor, trustee or committee." (Emphasis added.)

It is clear from the foregoing section that the life tenants named in the Will of J. W. Watkins were legally liable for the taxes on the property in question during the continuance of their life estate. Certainly, upon the death of J. W. Watkins, the life tenants named in the Will immediately became entitled to the possession of the tract of land in question.

Section 65-1627 of the 1952 Code of Laws provides for the proper listing of real property for taxation. Since this section is strongly argued and relied upon by all parties to this action, the pertinent portions thereof are quoted verbatim:

"All persons required by law to list property for others shall list it separately from their own and in the name of the owner thereof but shall be personally responsible for the taxes thereon for the year in which they list it and may retain so much thereof, or the proceeds of the sale thereof, in their own hands as will be sufficient to pay such taxes; provided, that:

"(1) All lands shall be listed and assessed as the property of the person having the *legal title to,* and the *right of possession of,* the land at the time of listing and assessment and, *in case of persons having possession of lands for life, in the name of the life tenant;*

"(2) In the case of estates administered, the property shall be listed and assessed as the property of the estate of the person deceased;" (Emphasis added).

The appellants contend, under the above statute, section 2 thereof, that since the estate of J. W. Watkins, deceased, was administered upon from 1929 through 1936, the property was properly listed, assessed, levied upon, and sold under the name of "the estate of J. W. Watkins" and so doing in any other manner would not have complied with the statute. They contend that the tax deed hereinabove referred to was valid in all respects, and operated to convey not only the interest of the life tenants but also the interest of the various remaindermen under the Will of J. W. Watkins.

The appellants cite the case of *Pollitzer v. Beinkempen,* 76 S. C. 517, 57 S. E. 475, 476, in support of their position. This case was a suit brought for the purpose of setting aside a tax deed as a "cloud on the title of the plaintiffs." From a judgment in favor of the plaintiffs an appeal was prosecuted to this Court. In reversing the lower Court and finding for the defendant, this Court held that a suit to remove a cloud from the title was premature for the reason that the plaintiffs were not in possession of the property in question; and that the tax title there involved where the lands in question had been assessed in the name of "the estate of Chas. S. Kuh" was valid, for the reason that there was an administration of the estate in question, and the statute required the administrator to return the land for taxation in the name of the estate of the deceased person. It should be noted and emphasized that the interest of life tenants and remaindermen were in nowise involved in this case. The Court, in delivering its opinion, said:

"* * * If the law of this state contemplates that the administrator shall return the lands owned by the intestate at the time of his death, and the listing and assessment of such land as lands of the estate of such deceased person, that is an end of the matter. True, an estate or an administrator, as such, does not hold the title to the lands, but that is no reason why the General Assembly should not for convenience impose upon the administrator the duty of returning the land, and require the assessment in the name of the estate. Ownership by the estate or by the administrator is not a condition precedent to the power of the General Assembly to require property to be so returned and assessed. To impose the duty of returning such property on heirs, who may be widely scattered, or minors, or lunatic or in prison, would often result in great hardship. * * *"

And again from the same case:

"* * * In addition to this, it is not reasonable to suppose the General Assembly would impose upon tax officers the duty to unravel complicated inheritances and ascertain the heirs. On the other hand, to require the return to be made by the administrator in the name of the estate, and the collection of the taxes from the property of the estate is fair to all, both creditors and heirs."

The appellants also cite the case of *Koth v. Pallachucola Club,* 79 S. C. 514, 61 S. E. 77, 78. This case, in substance, holds that where real estate had been assessed for taxes, levied on, and sold as lands of "heirs Ann May Mason", was *prima facie* valid, although the individual names of the heirs were not listed. It appears from an examination of the opinion in the case that there had been no administration upon the estate of the deceased landowner. This Court held that the Circuit Court was right in holding that the assessment, levy and sale of the property for taxation in the name of the heirs of the deceased landowner did not make the tax title fatally defective. It is true that in this case the Court quoted with approval from the case of *Pollitzer v. Beinkempen, supra;* but it should again be pointed out that the interest of

life tenants and remaindermen were in nowise involved in the case, nor could the provision of Section 65-1627 (2) of the Code be applied for the reason that there was no administration upon the estate of the deceased landowner.

The appellants also rely upon the case of *Carter v. Wroten,* 187 S. C. 432, 198 S. E. 13, 119 A. L. R. 379. It appears from the opinion in this case that a tract of land was listed, assessed, levied upon and sold as land of "the estate of Berry Wroten, deceased". It also appears that at the time of such listing and assessment there had been no administration upon the estate of Berry Wroten. The Court held, when it appeared that Berry Wroten died intestate, and there being no administration of the estate, the title descended and immediately vested in his heirs at law. The Court held that the Sheriff's tax deed was invalid because of the fact that the land it purported to convey was assessed, levied upon and sold in the name of the "estate of Berry Wroten, deceased" and not in the name of his heirs at law, who held the legal title. and had the right of possession. Again, we should emphasize that the interest of life tenants and remaindermen were in nowise involved in this case. We quote the following from this case [187 S. C. 432, 198 S. E. 16] :

"The estate of a deceased person, as commonly understood, consists of real and personal property, choses in action, debts, etc. An estate as such cannot hold legal title to lands, because it is neither a person nor a legal entity. It was pointed out very clearly in *Koth v. Pallachucola Club,* 79 S. C. 514, 61 S. E. 77, that lands may be returned for taxation as the property of 'the estate of' the person deceased, only where there has been an administration of such estate, and that the return is authorized to be made in this wise solely because of the legislative requirement appearing in the proviso of the statute we have quoted. That statute, without ambiguity, and by clear import, provides that where there has been no administration of the estate of a person dying intestate, the land must be assessed in the name of the real owner, that is, the person or persons having the legal title to and the right of possession of the same."

And again from this case we quote as follows:

"The term, 'the estate of' is not synonymous with or equivalent to the word 'heirs' so as to designate a person or persons who hold title to land. The word 'heirs' connotes living persons who may take as distributees at law, whereas the term, 'the estate of' a deceased person is merely indicative of the subject-matter which the heirs may take by inheritance."

The true owners of the land devised by J. W. Watkins, at the time of the assessment, levy and sale thereof by the Sheriff of Kershaw County, were the life tenants named in his said Will. The true owners of the remainder were the respondents in this case. The term "the estate of" is not synonymous with or equivalent to life tenants or remaindermen so as to designate the persons who hold title to the land. The words "life tenants" connote living persons who have the legal title to and the right of possession of the land.

The case of *Taylor v. Strauss,* 95 S. C. 295, 78 S. E. 883, 885, was an action to recover possession of a tract of land which had been sold for taxes assessed against J. L. Keels, the life tenant, and purchased by one Strauss. The plaintiffs were the remaindermen and they brought this action after the death of the life tenant against one Strauss to whom a deed of conveyance had been made when the property was sold for delinquent taxes. The lower Court granted a nonsuit and held that the sale of the land in question for taxes against the life tenant, and a deed to the purchaser made pursuant to such sale, carried with it not only the interest of the life tenant but also the interest of any remaindermen. Upon appeal to this Court, the judgment of the lower Court was reversed, and in the opinion the Court said:

"The statutes provide that property in the possession of a life tenant shall be listed for taxation against him, but they do not contemplate that the taxes should be assessed against the property of the remaindermen. It was no doubt supposed that the value of the life estate would be sufficient to satisfy the taxes; and the intention of the Legislature was to prevent

just such a case as the one now under consideration, where the rights of the remaindermen would otherwise be sacrificed, when there is no necessity to resort to their property."

In the case of *Campbell v. Williams,* 171 S. C. 279, 172 S. E. 142, 145, this Court said:

"Under the statutes of this state it is well settled that the duty is on the life tenant to pay the taxes and that the interests of remaindermen are not affected by reason of the failure of the life tenant so to do. It is also well settled that no taxes may be assessed against the interests of remaindermen during the existence of the life estate, the reason being that the Legislature supposed the value of the life estate would be sufficient to satisfy the taxes and it was the intention under our statute to protect the rights of remaindermen and not allow them to be sacrificed where no necessity therefor exists. This point was expressly declared in *Taylor v. Strauss,* 95 S. C. 295, 78 S. E. 883, and also in *Parker v. Horton,* 114 S. C. 313, 103 S. E. 546.

"The statutory law relied upon by Judge Gary, in writing the opinion in *Taylor v. Strauss,* has been unchanged in this state and the applicable sections appear in Volume 2, Code of Laws of South Carolina 1932, §§ 2567, 2569, 2605, and 2713.

"I do not think that there is any question but that under the aforesaid statutes, particularly section 2605, the 1932 state, county, and city taxes do not constitute a lien on the property in question. The reasons given in the cases above cited are equally applicable to the lien of the taxes for the year 1932 as to the preceding years for the reason that section 2605 clearly contemplates that the Legislature had in mind that the life tenant should be personally liable for the payment of taxes accruing on the property in question at the beginning of each fiscal year. Furthermore, this section expressly provides that the property in possession of or owned by a life tenant should be returned by the life tenant in his name. The simple test to apply is this: If this property were sold by the sheriff of the city of Columbia and the tax officer

of Richland county for unpaid 1932 city, county, and state taxes, the purchaser would get only such interest as the life tenant had and such purchaser could not acquire any interest that these plaintiffs, as remaindermen, had in the property in question. In this connection see the case of *Parker v. Horton, supra.*"

The holding of the Court in *Campbelll v. Williams,* has been followed and approved in the cases of *Bolt v. Sullivan.* 173 S. C. 24, 174 S. E. 491; *Cook v. Knight,* 173 S. C. 278, 175 S. E. 506; and *Crook v. Hartford Fire Ins. Co., etc.,* 175 S. C. 42, 178 S. E. 254.

In the case of *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197, 200, it is said:

"The statute is explicit that lands shall be listed and assessed and levied on and sold in the name of the true owner. Does the failure to do so in this instance vitiate the tax sale?

"It is a common assumption that a tax execution is issued against the property; such is not the case; it is issued against the defaulting taxpayer. The assessed taxes are a debt due to the State by the Owner of the property. Section 2569, Civil Code, 1932, (Section 65-2701, 1952 Code of Laws), declares that: 'All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged.'

"And the taxes may be made out of any property the taxpayer has. It is thus seen that the execution must issue against the true owner of the property."

See also in this connection the cases of *Osborne v. Vallentine,* 196 S. C. 90, 12 S. E. (2d) 856, and *Gregg v. Moore,* 226 S. C. 366, 85 S. E. (2d) 279.

The case of *Osborne v. Vallentine,* 196 S. C. 90, 12 S. E. (2d) 856, 858, was an action for the purpose of recovering the possession of certain real estate, and cancelling a tax deed thereto held by one Vallentine. Mrs. Nell Pate, the owner of the real estate, died testate on February 19, 1935, leaving a Will wherein she devised to the respondents the

premises involved. The Will was duly admitted to probate in Orangeburg County. The lands in question were listed on the tax books in the name of Mrs. Nell Pate for the years 1932 through 1935, inclusive. The land was sold for taxes by the delinquent tax collector of said county on December 2, 1935, under executions issued by the County Treasurer of said county, for the years 1932 through 1934, and bid in by the Forfeited Land Commission for said county, and thereafter conveyed by the delinquent tax collector to one Vallentine. The property was assessed in the name of Mrs. Nell Pate and the execution was issued and levy made in her name, and the notice of sale and the sale itself were in the name of the said Mrs. Pate. The trial Judge directed a verdict for the respondents on the ground that the assessment, levy, advertisement and sale must be in the name of the true owner, who, in this case, at the time of sale, were the devisees. Upon appeal to this Court it was held that at the time of the levy upon the property in question the owners of the property were the devisees, but since the levy was made in the name of the deceased testatrix, such was invalid. It was held that the levy, advertisement and sale should have been made in the names of the devisees, the owners at the time thereof, and not in the name of the deceased testatrix. The Court said:

"There is abundant reason to support the above holding. It is a well-established principle that due process of law requires some sort of notice to a landowner before he is deprived of his property. It is an anomalous situation that the statutes of this State require actual notice to a mortgagee of land about to be sold for taxes, and make no such requirement for actual notice to the owner. It would appear that the constructive notice provided by the levy, advertisement and sale in the owner's name is deemed sufficient. Such notice to the owners, as required by the tax sale statutes, being constructive rather than actual, the court requires strict compliance therewith. In *Dickson v. Burckmyer*, 67 S. C. 526, 533, 46 S. E. 343, 345, the court states: '* * * The sound view is that all requirements of the law leading up to tax

sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded mandatory, and are to be strictly enforced. * * *' "

■ The life tenants, under the Will of J. W. Watkins, took directly from him and immediately upon his death.

In the case of *Satcher v. Grice,* 53 S. C. 126, 31 S. E. 3, 4, this Court said:

"* * * Since the fee cannot be in abeyance, a devisee of land takes under the will directly from the testator immediately on his death. *Crossland [Crossland's Ex'rs] v. Murdock,* 4 McCord 217; 19 Am. & Eng. Enc. Law, 181. Such title, therefore, vests on the death of the testator, and not at the probate of the will. The probate, whenever it occurs, relates back to the death of the testator. * * *"

In the case of *First National Bank of Holly Hill v. Bennett,* 206 S. C. 402, 34 S. E. (2d) 678, 680, the Court said:

"The most, if not all, of these cases involved remainders after life estates, a more complicated situation than that of the instant case, but the principle is the same. This case might well be rested upon the hornbook rule that a will speaks (takes effect) as of the death of the maker, which is its effective date. And a donee thereunder takes immediately in the absence of qualifying language in the will, and there is none here except the trust for liquidation and distribution of the residue * * *"

In the recent case of *Stamper v. Avant,* S. C., 104 S. E. (2d) 565, 567, it appears that James H. Detyens died testate in 1901, and by the terms of his Will he devised his property to his wife, Margaret S. Detyens for life, and after her death the property was to go to his children, share and share alike. Under the terms of the Will, Margaret S. Detyens, the wife of the testator, was appointed executrix of the said Will. She died in the year 1951. During the year 1917 the lands of which the testator was seized and possessed at the time of his death, and in which his wife held a life estate, with a

remainder to their children, were levied upon and sold for unpaid taxes assessed against "the estate of J. H. Detyens, deceased, testate." The property was sold and conveyed to one C. E. Fore, and by successive conveyances, the said premises were deeded to one Avant. The contest was between Avant, under the tax deed, and the remaindermen under the Will of the testator. The lower Court held in favor of the remaindermen and found that they were the owners of the premises described in the complaint as tenants in common. Upon appeal to this Court by Avant, who held the tax deed, we adopted the Order of the Circuit Court, which held that the sale of the property for unpaid taxes, during the life of the life tenants did not affect the interest of the remaindermen. It is observed in the cited case that the property in question was sold in the name of the estate of the testator during the existence of the life estate and while the life tenant was the executrix of the said Will. The Court concluded that a life tenant is required to assess the land in his possession as such and to pay the taxes thereon, and the interest of the remaindermen are not affected by the failure of the life tenant so to do. It was also held that no taxes may be assessed against the interest of the remaindermen during the existence of the life estate. The lower Court based its decision upon the holding in the case of *Taylor v. Strauss; Bolt v. Sullivan;* and *Campbell v. Williams, supra.*

We conclude in this case that it was the duty of the life tenants under the Will of J. W. Watkins, to have the premises in question listed and assessed in their names. It was also the duty of the life tenants to pay the taxes assessed and levied against the said premises, and upon their failure so to do, only the interest of the life tenants could be levied upon and sold to satisfy the delinquent taxes, the said life tenants being the defaulting taxpayers. The real estate taxes were not enforceable against the fee while there was the outstanding life estate. We conclude, as did the Circuit Judge, that the tax sale and deed relied upon by the appellants were invalid as to the rights of the remaindermen.

614

The appellants also contend that the 1929 taxes became due during the life of J. W. Watkins, the testator; and that a levy and sale for the delinquent taxes for the year 1929 would carry the fee simple title. However, this Court does not deem it necessary to determine whether or not the taxes for the year 1929 were properly assessed because we have determined that the listing and assessment, levy and sale for taxes for the years 1930 through 1936 were not according to law, it follows that any sale for these taxes would have been void irrespective of whether or not the taxes were properly assessed for the year 1929.

In Minor on Real Property, Volume II, Chapter 49, Section 1366, it is said:

"It is a general presumption of law that when land has been sold for taxes in part illegal, some portion of the land has been taken to satisfy an illegal demand, and that the necessity might not have arisen for the sale, if only the legal and true tax had been called for. The illegality of part of the taxes for which the land is sold, however, small that part may be, taints the whole transaction and renders the sale void."

Our own Court, in the case of *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197, 204, quoting from the case of *Charleston Heights Co. v. City Council of Charleston,* 138 S. C. 187, 136 S. E. 393, said:

"Assuming that the city council has the same rights as to school taxes as are conferred upon the state, the law seems plain that a tax sale is void unless the property seized was liable for all of the taxes for which it was sold. * * *

" ' "The decisions generally recognize the following fundamental rules: That a tax sale is invalid for every purpose unless the property was at the time liable for all the taxes for which it was sold * * *." 37 Cyc., 1287.

" 'In *Gage v. Pumpelly,* 115 U. S. 454, 6 S. Ct. 136, 29 L. Ed. 449, it is held:

" ' "Under the laws of that state (Illinois), as construed by its courts, if any portion of a tax assessed upon real estate,

and levied and collected by sale of the property, is illegal, the sale and the tax deed are void." (Citing cases from Illinois, Ohio, Mississippi, California, and Cooley on Taxation.)

" ' "A sale of land for taxes is not valid unless the land was liable for all the taxes for which it was sold." *Bucknall v. Story,* 36 Cal. 67.' "

We conclude that the Circuit Judge was correct in sustaining the demurrer of the respondents to the answer of the appellants.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.