17681

Donnie BARBER, Appellant, v. CAROLINA AUTO SALES *et al.,*
Respondents

(115 S. E. (2d) 291)

*E. E. Wolfe, Jr., Esq.*, of Columbia, *for Appellant,*

*Messrs. Taylor & Foard,* of Columbia, *for Respondents,*

July 12, 1960.

OXNER, Justice.

This is an action to recover actual and punitive damages for the alleged conversion of an automobile. At the conclusion of plaintiff's testimony, the Court granted a motion by defendants for a nonsuit. From this order, plaintiff has appealed.

Respondents, doing business under the name and style of Carolina Auto Sales, are engaged in the business of buying and selling automobiles in Columbia, South Carolina. Appellant, who is approximately 31 years of age, was married in West Virginia. To this union were born five children, now ranging in age from one to seven. He has been in the army for twelve years and has attained the rank of sergeant. After being stationed at Fort Jackson, he bought a home in Columbia where he resided with his wife and children. He had a 1950 Oldsmobile which was registered in his name. In October, 1958, he was transferred to Germany. He left his automobile in charge of his wife for family use. On January 5, 1959, while he was still in Germany, his wife, without his knowledge or consent, traded the 1950 Oldsmobile to the Carolina Auto Sales for a 1956 Oldsmobile. She used his automobile as a down payment and gave a mortgage on the 1956 Oldsmobile to secure the balance of the purchase price. The newly purchased car was registered in her name. On January 31, 1959, the Carolina Auto Sales sold the 1950 Oldsmobile to a third party.

Appellant testified that several months later he received information that his wife was going out with other men and neglecting his children. He secured from his commanding officer in Germany an emergency leave and returned to Columbia on March 23, 1959. He then learned for the first time that his car had been sold by his wife, who at that time was working in a Columbia restaurant, and that his children were at the home of his parents in West Virginia. On the night of his return he went to the place of business of the Carolina Auto Sales to see if he could locate his automobile but was unable to do so. The next day he asked his wife to drive him to West Virginia to see about his children who were ill. She drove him in the 1956 Oldsmobile. Upon arriving in West Virginia he found it necessary to hospitalize his children. While there he brought suit against his wife for divorce. After a stay of approximately two and a half weeks in West Virginia, his wife drove him back to Colum-

bia. Within about a week after his return, he consulted counsel in reference to his automobile. Thereafter, on April 20, 1959, this suit for conversion was commenced.

Shortly after the suit was brought, a representative of the Finance Company which had purchased the conditional sales contract or mortgage sought to have appellant assume the indebtedness and make the payments, but he declined to have anything to do with the transaction. The car was then repossessed.

There is no evidence that appellant ever drove his wife's automobile or assumed any dominion or control over it. Other than the trip to West Virginia, it was used for his benefit only on a few occasions when his wife drove him on necessary errands around Columbia.

Although having little or no bearing on the issue of conversion, it may be stated that on May 12, 1959, appellant was granted a divorce by the West Virginia courts but notwithstanding this divorce, his wife has continued to live with him and his children in Columbia. His explanation of this unusual situation is that on his salary he was unable to employ anyone to take care of his children while he was at work and that the arrangement which he made was the only one which was feasible.

The nonsuit was granted upon the grounds that the wife had implied authority to trade the automobile and, if not, appellant, upon returning from Germany, acquiesced in and ratified the transaction.

It is well settled that the wife is not the agent of her husband by virtue of the marital relationship between them. *Pitt v. Speight,* 222 N. C. 585, 24 S. E. (2d) 350; Restatement, Agency (2d), Section 22(b). He may, however, make her his agent and be bound by her acts as such. "The agency relationship in such case ordinarily rests upon the same considerations as any other agency; she is his agent, and he is bound by her acts as his agent, only when her agency is express, implied, or ostensible." 26 Am.

Jur., Husband and Wife, Section 236. There may be circumstances where an agency may arise by implication of law, *ex necessitate*. But the scope of such an agency is very limited and is no broader than the exigencies which call it into being. The fact alone that the husband is away from home does not clothe his wife with implied authority to sell and dispose of his property as if it were her own. 26 Am. Jur., Husband and Wife, Section 240. "Where the wife is left in possession of the husband's property during his absence, as where he has absconded and his whereabouts are unknown, the law will imply or presume that she is acting as his agent and that she has authority to exercise the usual and ordinary control over the property. However, the mere fact that the husband is absent does not give rise to a presumption that the wife is his agent generally; her authority springs from and is limited to what can be reasonably presumed to be the intention of the husband; it does not extend beyond the authority which is usually and customarily conferred by husbands under the same or similar circumstances." 41 C. J. S., Husband and Wife, § 65b.

It is equally clear that the fact that the owner of an automobile has left it in the possession of another does not give the latter implied authority to sell it. *Hopkins v. Smathers*, 114 S. C. 488, 104 S. E. 30. This is true even though the relationship between the parties is that of husband and wife. *Arnold v. Conner*, 100 Ga. App. 503, 111 S. E. (2d) 638. In Blashfield, Cyclopedia of Automobile Law and Practice, Volume 7, Section 4356, it is stated: "The owner of an automobile, it has been held, by permitting his wife to use the vehicle, does not clothe her with such authority as to make binding upon him her sale of the automobile to a third person without the owner's knowledge or consent."

Under the foregoing principles, we conclude that appellant's wife was not empowered to sell his automobile while he was stationed in Germany. It is conceded that she had no express authority. The record discloses no circumstances

from which an authority to sell may be implied from necessity. Nor is such authority usually and customarily given a wife during her husband's absence.

The question of ratification presents more difficulty. ■■ "Ratification as it relates to the law of agency may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." *Mebane v. Taylor,* 164 S. C. 87, 162 S. E. 65, 67. "Whether or not there has been a ratification of an unauthorized act by acceptance or retention of benefits thereof is usually a question of fact for the jury and not one of law for the court." 3 C. J. S., Agency, § 330, page 335.

While the question is a close one, we think under the ■ evidence the question of ratification should have been submitted to the jury. The car was purchased by the wife in her own name and not as agent for her husband. It was registered in her name. He never assumed ownership. He never drove it. The principal use of the car for his benefit was the trip to West Virginia. When he returned from Germany to Columbia, he found his car had been sold and his children removed to a distant State where they were ill. Under what might be reasonably inferred as compulsion, he asked his wife to drive him to West Virginia. The only other use of this car for his benefit consisted in his being driven by his wife on several short errands around Columbia. From these facts the jury might infer ratification but we cannot say they constitute ratification as a matter of law. If there was ratification, appellant necessarily assumed the payment of the balance of the purchase price notwithstanding the fact that title to the car was in his wife's name. Can it be said as a matter of law that he incurred this liability? The testimony is that when the Finance Company tried to get him to assume the oblingation, he expressly declined to do so, stating that he was having nothing to do with the transaction.

Although not cited by counsel, we have carefully considered *Southern Motors of Savannah, Inc. v. Krieger,* 86 Ga. App. 574, 71 S. E. (2d) 884, which was an action in trover against an automobile dealer for the recovery of the value of an automobile. In that case while a member of the armed forces was away on duty, his wife, without his knowledge or consent, traded his Chevrolet automobile to a Savannah dealer and purchased in her name and that of her husband a new Nash automobile. He first learned of the transaction when he returned to Savannah on September 1, 1951. He then went to the dealer and asked that certain repairs be made on the Nash which, however, were not in fact made. He took personal possession of the automobile and the next day he and his wife drove to Baltimore to see his father who was ill. They remained there for approximately two weeks and returned to Savannah on September 18th. He thereafter drove the car an additional thousand miles before notifying the dealer that he was repudiating the transaction. The Court held that his acts in accepting the fruits of the contract and using the new automobile for his exclusive benefit for a period of almost six weeks of intensive driving, during which time he failed to notify the dealer of any intention to disaffirm the contract on his part, constituted ratification as a matter of law.

While many of the facts in the above case are strikingly similar to those in the instant case, there are several major differences. There the newly acquired automobile was purchased in the name of both the wife and the husband. Here it was purchased in the name of the wife only, who did not purport to act for her husband. There the husband upon his return to Savannah took exclusive control of the car, sought to have it repaired and otherwise used it as if he were the sole owner. Here the husband never took control of the car. It remained in the possession of the wife.

The order of nonsuit is reversed and the case remanded for a new trial.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.