553 S.E.2d 453

**Gary JOHNSON, Plaintiff,**

**v.**

**Mohammad B. ARBABI and Akram Arbabi, Defendants/Third Party Plaintiffs,**

**v.**

**Beaufort County Treasurers Office and Joy Logan, Treasurer, Third Party Defendants.**

**Of whom Gary Johnson is, Respondent,**

**and**

**Mohammad B. Arbabi is, Appellant.**

**No. 3362.**

Court of Appeals of South Carolina.

Heard Nov. 9, 2000.

Decided June 25, 2001.

Rehearing Denied Oct. 17, 2001.

Thomas J. Finn, of Mullen Law Firm, of Hilton Head Island, for appellant.

J. Ray Westmoreland, of Hilton Head Island, for respondent.

ANDERSON, Judge:

Dr. Mohammad B. Arbabi appeals the trial court's decision confirming title in Gary Johnson for a condominium Johnson purchased at a tax sale. We reverse.

### *FACTS/PROCEDURAL BACKGROUND*

In January 1981, Dr. Arbabi and his wife, Akram Arbabi, as tenants in common, executed a contract to purchase a condominium in the Island Club Horizontal Property Regime on Hilton Head Island from the Island Club Investment Company ("ICIC"). The sale price was $90,000. ICIC financed the transaction. Title to the property was to remain in ICIC's name until the Arbabis paid their debt in full.

The Arbabis decided in 1989 or 1990 to pay off the balance due ICIC. Prior to recording the deed in the Arbabis' names, Dr. Arbabi's attorney requested copies of the property tax bills for 1988, 1989, and 1990 from the Beaufort County Tax Assessor. The attorney additionally asked the Tax Assessor's office to send all future tax bills to the Arbabis' primary address at 3739 White Trillium Drive East in Saginaw, Michigan. The Beaufort County authorities never responded to this letter. On September 3, 1991, the Arbabis recorded their deed in the names of "Mohammad B. Arbabi and Akram Arbabi."

The property taxes for 1990 were not paid. The Beaufort County Treasurer issued a warrant of execution against ICIC. On May 1, 1991, Herschel J. Evans, Jr., the Deputy County Treasurer, sent a notice of the delinquent tax sale to ICIC. Evans seized the property on July 2, 1991, and the County took exclusive possession. The County Treasurer advertised

the tax sale in the name of ICIC. Johnson bought the property at the tax sale for $7,000.

Dr. Arbabi moved out of the couple's White Trillium Drive East home in July 1992 due to marital difficulties. By letter dated September 1, 1992, which was addressed jointly to Dr. and Mrs. Arbabi, the County Treasurer stated the property had been sold and could be redeemed by paying $2,329.40 by October 7, 1992. The notice was sent to the White Trillium Drive East address.

In November 1992, the County Treasurer issued Johnson a tax deed, which indicated the defaulting taxpayer was ICIC. The deed additionally stated the tax collector mailed "to the owner of record on February 1, 1992 (year of expiration of redemption period) a Notice addressed to Mohammed B. and Akrem Arabi [sic] (owner of record on February 1, immediately preceding the end of the redemption period)."

Johnson commenced an action to quiet title in January 1993. Dr. Arbabi filed an answer and brought a third-party complaint against the Beaufort County Treasurer's Office and the County Treasurer, individually, seeking to have the tax deed voided.[1] Mrs. Arbabi did not make a return. Both Johnson and Dr. Arbabi moved for summary judgment. The Circuit Court held the County had complied with S.C.Code Ann. § 12–51–40(d)[2] in advertising the property in the name of ICIC, the delinquent taxpayer for the 1990 taxes. Dr. Arbabi's motion was denied upon this ground. The court decided, however, the County did not comply with § 12–51–120.[3]

---

1. Dr. Arbabi's claims against Beaufort County and the treasurer are not part of this appeal.

2. Section § 12–51–40(d) stated, in part:

 The property must be advertised for sale at public auction. The advertisement must be in a newspaper of general circulation within the county or municipality, if applicable, and must be entitled "Delinquent Tax Sale." It shall include the delinquent taxpayer's name and the description of the property, a reference to the county auditor's map-block-parcel number being sufficient for a description of realty. The advertising must be published once a week prior to the legal sales date for three consecutive weeks for the sale of real property, and two consecutive weeks for the sale of personal property.

3. When the County Treasurer sent the redemption notice to the Arbabis, § 12–51–120 read, in part:

The judge found: "Each owner had an interest in the property and the statute requires that each owner receive notice by 'certified mail return receipt requested—deliver to addressee only.' One notice addressed to two owners does not comply with the notice requirements of S.C.Code Ann. § 12–51–120." Consequently, the court granted summary judgment to Dr. Arbabi and the tax deed was declared invalid. Upon Johnson's motion to alter or amend the judgment, the court modified its order. The judge declared Mrs. Arbabi to be in default. He additionally granted Johnson the relief requested in the complaint, but only as to the undivided half-interest of Mrs. Arbabi. Dr. Arbabi was ordered to pay Johnson one-half of the bid price and other amounts associated with the sale.

Dr. Arbabi appealed the Circuit Court's decision. In an unpublished opinion, *Johnson v. Arbabi*, Op. No. 96–UP–008 (S.C.Ct.App. filed January 8, 1996), this Court deemed the trial court's issuance of relief to Dr. Arbabi was erroneous: "Dr. Arbabi did not state as a ground for his motion the County's failure to comply with § 12–51–120 . . . . Hence, the circuit court should not have addressed this ground." This Court determined the parties were back to the respective positions they occupied before the summary judgment order and the case would continue as if the ruling on Dr. Arbabi's motion had not been made.

On remand, the trial court found the County Treasurer complied with § 12–51–40(d) when it advertised the property in the name of ICIC because: (1) ICIC was the defaulting taxpayer; and (2) the County Treasurer was not aware of the unrecorded land contract between ICIC and the Arbabis. The judge additionally ruled the County Treasurer satisfied

---

Neither more than forty-five days nor less than twenty days prior to the end of the redemption period for real estate sold for taxes, the person officially charged with the collection of delinquent taxes shall mail a notice by "certified mail, return receipt requested—deliver to addressee only" to the owner of record immediately preceding the end of the redemption period at the best address of the owner available to the person officially charged with the collection of delinquent taxes that the real property described on the notice has been sold for taxes and if not redeemed by paying taxes, assessments, penalties, costs and eight percent interest on the bid price in the total amount of _____ dollars on or before _____ (twelve months from date of sale) . . . a tax title will be delivered to the successful purchaser at the tax sale.

§ 12–51–120 when it sent only one notice via restricted delivery to the White Trillium Drive East address. Mrs. Arbabi signed for the notice, which was addressed jointly to Dr. and Mrs. Arbabi; however, Dr. Arbabi no longer lived at the residence. The court decreed Mrs. Arbabi acted as Dr. Arbabi's agent; thus, her knowledge of the proceedings in Beaufort County was imputed to him. Further, Dr. Arbabi was found to have ratified the actions of his wife: "[Dr.] Arbabi made Mrs. Arbabi his agent by not returning to the White Trillium address after they separated ... [Dr.] Arbabi did not stop Mrs. Arbabi from receiving his mail ... [Dr.] Arbabi ratified the actions of his wife that were done on his behalf and the conduct of the parties establishes the agency relationship." Dr. Arbabi's argument regarding the County Treasurer's lack of adherence to § 12–51–130,[4] a provision that in part specifies the recital of certain procedural information in the issuance of a tax deed, was rejected. The judge noted the issue was not raised in Dr. Arbabi's pleadings and asseverated he would have ruled against Dr. Arbabi even if the issue had been properly before the court. Johnson was declared to hold a valid title to the condominium.

### STANDARD OF REVIEW

This is an action in equity. *See Godfrey v. Webb*, 277 S.C. 246, 285 S.E.2d 883 (1982) (ruling suit to set aside a tax deed is in equity); *Bryan v. Freeman*, 253 S.C. 50, 168 S.E.2d 793 (1969) (holding an action to quiet title is equitable in nature). Therefore, this Court may find facts according to our own view of the preponderance of the evidence. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). In addition, this appeal presents novel issues of law. In such a circumstance, we are free to decide issues presented to us with no particular deference to the trial court's findings. S.C. Const. art. V, §§ 5 & 9; S.C.Code Ann. §§ 14–3–320 & – 330 (1976 & Supp.2000); S.C.Code Ann. § 14–8–200(a) (Supp.

---

4. When this dispute arose, § 12–51–130 propounded, in part:

 The tax title shall include, among other things, the name of the defaulting·taxpayer, the date of the execution, the date the realty was posted and by whom, and the dates each certified notice was mailed to the party or parties of interest, to whom mailed and whether or not received by the addressee.

2000); *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000).

## ISSUES

I. Did the trial court err by declaring Mrs. Arbabi was Dr. Arbabi's agent when she received the notice of the right to redeem from the Beaufort County Treasurer?

II. Did the trial court err in holding the Beaufort County Treasurer complied with the provisions of § 12–51–120 by mailing only one notice of the right to redeem to Dr. and Mrs. Arbabi?

## LAW/ANALYSIS

### I. Agency Relationship Between Dr. and Mrs. Arbabi

■ Dr. Arbabi argues the trial court erred in holding Mrs. Arbabi was his agent at the time she received the redemption notice and that consequently, her knowledge of the tax sale was imputed to him. We agree.

In 1992, the law required tax authorities to send property owners notice of the redemption period's approaching end by "certified mail, return receipt requested—deliver to addressee only." S.C.Code Ann. § 12–51–120 (Supp.1991). The General Assembly amended the statute in 1996 to substitute "restricted delivery" for "deliver to addressee only" to conform with postal regulation terminology. Act No. 431, 1996 Acts 2622. The United States Postal Service describes "restricted delivery" service as permitting *"a mailer to deliver only to the addressee or addressee's authorized agent."* *In re Ryan Inv. Corp.,* 335 S.C. 392, 394–95, 517 S.E.2d 692, 693 (1999) (quoting United States Postal Services Domestic Mail Manual § S916.1.1) (emphasis added).

■ On remand, the trial court concluded an agency relationship could be implied from the relationship that existed between Dr. Arbabi and Mrs. Arbabi. This Court holds an implied agency cannot satisfy the requirements relating to the receipt of a redemption notice. An addressee's "authorized agent" can only be a person acting pursuant to the express authority of the addressee. *See* United States Postal Services Domestic Mail Manual § S916.3.1 ("Mail marked 'Restricted

Delivery' is delivered only to the addressee or to the person authorized in writing as the addressee's agent to receive the mail . . . .").

During the trial, the following colloquy occurred:

Counsel for Dr. Arbabi: I would ask that there is certainly no evidence here that there was [an] agency relationship.

The Court: Well, let me ask you this. A husband is always an agent for a wife and a wife is always an agent for her husband in a situation like this. I mean—

. . . .

The Court: I'm just thinking. You know, just like you have parents are natural guardians[,] so you've got natural agents . . . .

The court's pronouncement on this facet of agency law was incorrect.

A spouse, whether husband or wife, is not the agent of the other by virtue of the marital relationship that exists between them. Restatement (Second) of Agency § 22, cmt. b (1957). In *Barber v. Carolina Auto Sales,* 236 S.C. 594, 115 S.E.2d 291 (1960), the wife traded in the husband's car for a new automobile while the husband was stationed in Germany with the Army. The wife did not have permission, express or otherwise, to dispose of the husband's car. Upon his return, the husband brought a conversion action against the dealership. A nonsuit was granted by the trial court upon the grounds, *inter alia,* the husband's absence created the implied authority in the wife to act on his behalf and trade the automobile. The Supreme Court disagreed with the trial court's assessment:

Where the wife is left in possession of the husband's property during his absence, as where he has absconded and his whereabouts are unknown, the law will imply or presume that she is acting as his agent and that she has authority to exercise the usual and ordinary control over the property. *However, the mere fact that the husband is absent does not give rise to a presumption that the wife is his agent generally* ; her authority springs from and is limited to what can be reasonably presumed to be the intention of the husband; it does not extend beyond the authority which is usually and customarily conferred by husbands under the same or similar circumstances.

*Id.* at 598, 115 S.E.2d at 293 (citations omitted) (emphasis added); *see also* 41 C.J.S. *Husband & Wife* § 56 (1991) ("A spouse may constitute the other spouse as an agent either expressly or impliedly; but, if agency is implied, it must be by conduct, and not merely from a party's position as a spouse. Moreover, agency of a spouse should not be implied lightly, especially when the other spouse may be prejudiced seriously.") (footnotes omitted); Annotation, 41 Am.Jur.2d *Husband and Wife* § 155 (1995) ("Agency between spouses does not automatically arise from the marital relationship itself.") (footnote omitted); S.C. Jur. *Agency* § 6 (1994) ("No presumption arises from the fact of the marital relationship, without more, that [a spouse] is the agent of [the other spouse].") (footnote omitted).

A spouse is not *jure mariti* the agent of the other spouse. *Pitt v. Speight,* 222 N.C. 585, 24 S.E.2d 350 (1943). If such an agency is relied upon, it must be proven. *Id.; see also Hinson v. Roof,* 128 S.C. 470, 475, 122 S.E. 488, 490 (1924) ("The marriage relation of the parties . . . is not necessarily enough to establish the fact that the one is the agent of the other. There must be other proof.") (quoting *Lunge v. Abbott,* 114 Me. 177, 95 A. 942, 943 (1915)). The existence of agency between husband and wife is governed by the same rules that apply to other forms of agencies. *True v. Cudd,* 106 S.C. 478, 91 S.E. 856 (1917). At trial, Dr. Arbabi denied authorizing his wife to accept certified mail on his behalf. Concomitantly, there is no evidence in the record indicating Dr. Arbabi permitted Mrs. Arbabi to act upon his behalf regarding management of the Beaufort County property. We hold the trial court erred in finding Mrs. Arbabi was Dr. Arbabi's agent when she received the notice of the right to redeem.

## II. Sufficiency of Single Notice

Dr. Arbabi argues the trial court erred in finding the County Treasurer complied with § 12–51–120 when it mailed a joint redemption notice to Dr. Arbabi and Mrs. Arbabi. We agree.

The South Carolina Supreme Court and this Court have held the enforcing agencies of government to strict

compliance with all the legal requirements surrounding tax sales. *E.g., Dibble v. Bryant,* 274 S.C. 481, 265 S.E.2d 673 (1980); *Manji v. Blackwell,* 323 S.C. 91, 473 S.E.2d 837 (Ct.App.1996). Because notice to landowners, as required by the tax sales statutes, is constructive rather than actual, the courts requires strict compliance with these statutes. *Southern Region Indus. Realty, Inc. v. Timmerman,* 285 S.C. 142, 328 S.E.2d 128 (Ct.App.1985); *Taylor v. Jennings,* 233 S.C. 600, 106 S.E.2d 391 (1958); *Osborne v. Vallentine,* 196 S.C. 90, 12 S.E.2d 856 (1941); *Dickson v. Burckmyer,* 67 S.C. 526, 46 S.E. 343 (1903); *see also* 72 Am.Jur.2d *State and Local Taxation* § 1019 (1974) (stating the requirements of the statute as to the service and proof of service of the notice required to terminate an owner's right to redeem from a tax sale are considered mandatory and required to be strictly followed). "The sound view is that all requirements of the law leading up to tax sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are regarded to be mandatory, and are to be strictly enforced." *Aldridge v. Rutledge,* 269 S.C. 475, 478, 238 S.E.2d 165, 166 (1977) (quoting *Osborne,* 196 S.C. at 94, 12 S.E.2d at 858); *see also Marx v. Hanthorn,* 148 U.S. 172, 180, 13 S.Ct. 508, 510, 37 L.Ed. 410 (1893) ("As there must be express statutory authority for selling lands for taxes, and as such sale is in the nature of an *ex parte* proceeding, there must be, in order to make out a valid title . . . compliance with the provisions of the law authorizing the sale. A statutory power, to be validly executed, must be executed according to the statutory directions.").

 A taxing authority's failure to give the required notice is not excused regardless of whether the taxpayer received actual notice. *Manji,* 323 S.C. at 93, 473 S.E.2d at 838 (citing *Aldridge,* 269 S.C. at 478, 238 S.E.2d at 166); *see also South Carolina Fed. Sav. Bank v. Atlantic Land Title Co.,* 314 S.C. 292, 295, 442 S.E.2d 630, 632 (Ct.App.1994) ("Statutory requirements protecting against tax sale forfeiture of real property are strictly construed, and statutory notice requirements may not be circumvented simply by establishing actual notice of a tax sale.") (citation omitted). Failure to give proper notice is a fundamental defect that renders the proceedings absolutely void. *Donohue v. Ward,* 298 S.C. 75, 378 S.E.2d

261 (Ct.App.1989); *see also* 72 Am.Jur.2d *State and Local Taxation* § 916 (1974) ("Statutory requirements of notice of a tax sale are imperative and must be complied with; in the absence of notice to the tax delinquent, a sale passes no title to the tax purchaser.") (footnote omitted).

It is well established "[w]hen . . . land is owned in fee by tenants in common, notice to one of them [of the impending tax sale] is not sufficient, and if notice is not given to all of them, the sale is void, at least against those who have not been notified." 72 Am.Jur.2d *State and Local Taxation* § 924 (1974) (footnote omitted). The same rule applies regarding redemption notices: each co-tenant is equally entitled to separate notice. Without proper notice, the entire transaction is void. As a practical matter, we find one notice addressed to two or more tenants in common cannot meet the requirements of § 12–51–120. In sending a single notice, a tax authority assumes the co-tenant who receives the notice will share it with the other co-tenants. Such an assumption does not comport with our case law requiring strict compliance with the notice requirements to afford each co-tenant protection against surprise or the sacrifice of his property. Accordingly, we find the trial court erred in holding the County Treasurer complied with § 12–51–120.[5]

This Court has promulgated: "[W]here a statute requires as a condition precedent to foreclosing a taxpayer's rights in property sold for taxes that he be given notice of his right to redeem, such a requirement is 'generally regarded as jurisdictional, and therefore, the owner's right of redemption cannot be cut off unless the required notice is given.'" *Good v. Kennedy*, 291 S.C. 204, 207, 352 S.E.2d 708, 711 (Ct.App.1987) (quoting 72 Am.Jur.2d *State and Local Taxation* § 1010 (1974)).

---

5. In its prior opinion, this Court stated:

"[E]ven if the issue of notice under § 12–51–120 [had been properly presented to] the trial court, we hold the statute does not require separate notices to have been sent to the Arbabis. A joint notice was sufficient if the statue was otherwise complied with and both Dr. and Mrs. Arbabi signed the certified mail receipt for the joint notice." This statement was *obiter dictum* and is not binding on our present consideration of the issue.

Courts in other jurisdictions have recognized or held the statutory provisions regarding notice to redeem are mandatory, and that strict compliance with these requirements is essential to the validity of a tax proceeding. Nora A. Uehlein, Annotation, *Right of Interested Party Receiving Due Notice of Tax Sale or of Right to Redeem to Assert Failure or Insufficiency of Notice to Other Interested Party*, 45 A.L.R.4th 447 (1986). In many circumstances, the failure to rigidly observe the notice procedures governing tax sales has resulted in the nullification of an entire transaction. *See, e.g., Montgomery v. Gipson*, 69 So.2d 305 (Fla.1954) (holding notice of right to redeem to one spouse was insufficient and tax deed was void); *Brousseau v. Conklin*, 301 Mich. 241, 3 N.W.2d 260, 261 (1942) ("Until the statutory notice is served upon all parties entitled thereto and proof thereof is made and filed, the right of redemption remains to all." (citation omitted)); *Bodinger v. Garrison*, 250 A.D. 463, 294 N.Y.S. 916 (N.Y.App.Div.1937) (ruling failure of holder of tax deed to give notice to redeem to all interested parties, as required by law, vitiates tax deed); *Teslovich v. Johnson*, 486 Pa. 622, 406 A.2d 1374 (1979) (concluding tax sale was voided where separate and individual notice was not provided to each named owner of the property, per the mandate of the state law).

In contrariety, other tribunals have held the failure to provide notice to a party having an interest in property renders the sale as to that party's interest invalid, but does not prevent the sale from being valid and effective as to the parties duly served. 72 Am.Jur.2d *State and Local Taxation* § 925 (1974); *see also, e.g., Hatcher v. Howes*, 138 Ky. 464, 128 S.W. 335 (1910) (holding while sale of interest of a property owner was void for lack of notice, it does not invalidate the sale of remaining interests); *In re Interstate Land Co.*, 118 La. 587, 43 So. 173 (1906) (finding adult co-owner was not entitled to relief when he received notice; however, notice to adult was not binding on minor co-owners); *Nugent v. Lindsley*, 100 N.J. Eq. 87, 135 A. 271 (1926) (voiding sale of interests of owners who had not been served, but upholding sale of interests of those who had received notice).

 South Carolina's tax sales laws were promulgated to protect the government against wilful, persistent, and long

standing delinquents. They were not created to punish tax-payers who have failed to pay their taxes because of legitimate mistake or error. The divestiture of a person's property due to outstanding tax obligations is a drastic and serious mea-sure. When government issues notices relating to tax sales and redemption, it must do so in punctilious compliance with the procedures outlined within the 1976 Code. Failure to assiduously follow the delineated processes may result in the inequitable deprivation of an owner's rights in his property. Therefore, we hold any material deviation from the notice requirements will eventuate in the complete abrogation of a transaction granting title to a tax sale purchaser.

## *CONCLUSION*

We rule § 12–51–120 requires the notice of the right to redeem to be mailed to the owner of record or the owner's "authorized agent." The law of implied agency is *not* applica-ble to the notice requirements of a tax sale. Under the statute and the regulations of the United States Postal Ser-vice, an addressee's "authorized agent" is an agent acting with *express* authority of the addressee.

Finally, given this state's mandate that all proceedings leading to a tax sale must strictly fulfill the statutory require-ments to avoid a forfeiture of the taxpayer's property, we hold a taxing authority's failure to provide a co-tenant with notice of redemption voids the entire sale. As the County Treasurer failed to provide Mr. Arbabi notice as required by § 12–51–120, we find the entire tax sale is void. The trial court thus erred in quieting title to the condominium in Johnson.

**REVERSED.**[6]

---

**6.** In light of this disposition, we need not examine Dr. Arbabi's remain-ing issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling appellate court need not review remaining issues when disposition of prior issues are dispositive) (citing *Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993)).

This Court declines to address Johnson's additional sustaining grounds. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420 n. 9, 526 S.E.2d 716, 723 n. 9 (2000) (holding appellate court may decline addressing respondent's additional sustain-ing grounds when it reverses prior court's decision) (citing *Smith v.*

HEARN, C.J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, Judge, dissenting:

While I agree with the majority's analysis and result on the question of the agency relationship between Dr. and Mrs. Arbabi, under the peculiar circumstances of this case I respectfully disagree with their conclusion on the question of the sufficiency of the legal notice. Therefore, I dissent.

The critical issue is whether the tax collector of Beaufort County strictly complied with the requirements of S.C.Code Ann. § 12–51–120 (2000 & Supp.2000) in sending only one written notice addressed to co-tenants at their home address rather than two notices to the same address.

While the law of this state unquestionably requires the taxing authorities to strictly comply with all the legal requirements surrounding tax sales,[7] I think those requirements were met in this case. First, there is no question but that the correct method of mailing was employed. That is the factual distinction between this case and *Manji v. Blackwell,*[8] where the notice was sent certified mail only and not "deliver to addressee only." That deviation from the requirement of the statute was the sole reason the tax sale was held to be invalid in *Manji.*

Second, the correct and appropriate address was utilized. That is the distinguishing factor between this case and the cases of *Benton v. Logan,*[9] and *Good v. Kennedy.*[10] In *Benton,* it was determined that the tax official failed to exercise due diligence in determining the best address available when a notice was returned to him marked "Forwarding Order Ex-

*Haynsworth, Marion, McKay & Geurard,* 322 S.C. 433, 472 S.E.2d 612 (1996)).

7. *Tanner v. Florence County Treasurer,* 336 S.C. 552, 521 S.E.2d 153 (1999).

8. 323 S.C. 91, 473 S.E.2d 837 (Ct.App.1996).

9. 323 S.C. 338, 474 S.E.2d 446 (Ct.App.1996).

10. 291 S.C. 204, 352 S.E.2d 708 (Ct.App.1987).

pired." No such return was made in this case. In *Good*, the tax collector used an address other than the one on the deed and a tax sale was set aside for that reason. There is no question but that the correct address of Dr. and Mrs. Arbabi was utilized in this case, as it was the address they put on their deed and was additionally confirmed by letter from Dr. Arbabi's personal attorney directing any and all notices to him be sent to the address utilized by the county treasurer.

Under the circumstances, the sole question then is whether the county treasurer should have sent two separate notices to the same address. If so, should he have sent two notices, both addressed to both people, or should he have sent the two notices addressed individually? It is respectfully submitted either way the result would have been identical to the result in this case.

It is as important to point out what this case does not involve as what it does involve. It does not involve failing to send the required notice to the delinquent taxpayer. The notice was sent to Dr. Arbabi at his best address. It does not involve multiple owners who each provide separate addresses for tax notice purposes. Both owners provided the same address. It does not involve a failure to exercise due diligence. There was no reason for the treasurer to believe that Dr. Arbabi was not being appropriately noticed pursuant to the statute. It makes little sense to me that where multiple owners provide only one address for notice purposes each one must be sent a separate notice but all to the same address.

Had the statute in question been worded so as to provide that the mailing must be made to "each owner of record," I would have no complaint with the result reached by the majority. However, the statute merely requires notice be sent " *'to the owner of record* ' ... at the best address of the owner available." The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.[11] Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute.[12]

---

11. *Charleston County Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993).

12. *Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000).

Under the circumstances of this case, I would hold that the specific requirements of the statute have been met and, while it is regrettable that Dr. Arbabi did not receive actual notice, that is not required by the statute and his failure to receive notice is not attributable to any omission on the part of the treasurer, but is solely due to his own unfortunate situation. I would affirm.